**BORG–WARNER PROTECTIVE SERVICES CORPORATION, Plaintiff,**

v.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Defendant.**

**No. Civ.A. 99–00861 (HHK).**

United States District Court, District of Columbia.

Jan. 4, 2000.

Thomas P. Steindler, Charles R. Work, McDermott, Will & Emery, Washington, DC, for plaintiff.

Ellen J. Vargyas, Legal Counsel, Thomas J. Schlagater, Assistant Legal Counsel, John F. Sherlock, III, Attorney, U.S. Equal Employment Opportunity Commission, Office of Legal Counsel, Washington, DC, for defendant.

## MEMORANDUM

KENNEDY, District Judge.

Borg–Warner Protective Services Corporation ("Borg–Warner") filed the instant action seeking a declaration that the compulsory arbitration agreement it requires its employees to sign does not violate Title VII, and for related injunctive relief. Presently before the court is the motion of the United States Equal Employment Opportunity Commission ("EEOC") to dismiss for lack of subject matter jurisdiction. For the reasons discussed below, the court concludes that the EEOC's motion to dismiss should be granted.

### I. BACKGROUND

As a condition of employment, Borg–Warner requires its employees to sign an agreement to submit any disputes with Borg–Warner arising from their employment to arbitration ("Arbitration Agreement"), including claims arising under fed-eral statutes such as Title VII. Complaint ¶¶ 6–7. In 1996, the EEOC adopted a National Enforcement Plan ("NEP") that sets forth its enforcement priorities. Compl. ¶ 17 & Exh. 2. The NEP establishes as an enforcement priority "[c]laims presenting unresolved issues of statutory interpretation under one or more of the statutes enforced by the Commission," including "[c]laims addressing the legality of agreements that mandate binding arbitration of employment discrimination disputes imposed as a condition of initial or continued employment." Compl. ¶ 17 & Exh. 2 at § B(1)(h).

In July 1997, the EEOC issued a "Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes as a Condition of Employment" ("Policy Statement"). Compl. ¶ 18 & Exh. 3 at 11. The Policy Statement sets forth the EEOC's "position that agreements that mandate binding arbitration of discrimination claims as a condition of employment are contrary to the fundamental principles" of federal civil rights laws, including laws prohibiting employment discrimination. Compl.Exh. 3 at 11. The Policy Statement discusses the EEOC's reasons for this position. *Id.* at 11–16. The Policy Statement further provides instructions to its field offices and its headquarters, as follows:

1. ... Field offices are instructed to closely scrutinize each charge involving an arbitration agreement to determine whether the agreement was secured under coercive circumstances (e.g., as a condition of employment). The Commission will process a charge and bring suit, in appropriate cases, notwithstanding the charging party's agreement to arbitrate.

2. Pursuant to the statement of priorities in the National Enforcement Plan *see* § B(1)(h), the Commission will continue to challenge the legality of specific agreements that mandate binding arbitration of employment discrimination

disputes as a condition of employment. . . .

*Id.* at 16.

On December 10, 1998, one of Borg–Warner's former employees, Rudy Lee, filed a charge with the EEOC's Seattle, Washington office alleging that Borg–Warner had discriminated against him on the basis of race. Compl. ¶ 20. Although Mr. Lee had signed the Arbitration Agreement as a condition of his employment, Mr. Lee did not mention it in his EEOC charge. Compl. ¶¶ 6, 21. On March 12, 1999, after it had investigated Mr. Lee's charge, the EEOC issued its determination ("Determination") that there was insufficient evidence to support Mr. Lee's charge of race discrimination. Compl. ¶ 21 & Exh. 5 at 1. The Determination further stated, however, that the EEOC had found "reasonable cause to believe that there is a violation of Title VII in that [Borg–Warner] requires employees to sign a Pre-dispute Resolution Agreement, which requires arbitration in lieu of court action in matters relating to employment." *Id.* On the same date, the EEOC invited Borg–Warner to conciliate the Lee matter by, *inter alia*, ceasing use of, and rescinding, the Arbitration Agreement. Compl. ¶ 22 & Exh. 6. Subsequent conversations between Borg–Warner's counsel and the EEOC made clear that these were non-negotiable conditions, and conciliation failed. Compl. ¶¶ 23–24 & Exhs. 7–8.

On April 8, the EEOC issued Mr. Lee a Notice of Right to Sue. Def.'s Mot. Dismiss Exh. 1. The Notice provides in pertinent part:

> The Commission has determined that it will not bring a civil action against the respondent(s) and accordingly is issuing this Notice of Right to Sue. With the issuance of this Notice the Commission terminates its process with respect to your charge, except that the Commission may seek status as intervenor if you decide to sue on your own behalf as described below.

Def.'s Mot. Dismiss Exh. 1. In the meantime, on April 5, 1999, Borg–Warner filed suit in this court, seeking declaratory and injunctive relief. Compl. at 10.

### III. ANALYSIS

The EEOC seeks to have this case dismissed on several grounds. The EEOC contends that this court does not have subject matter jurisdiction under the statutory provisions set forth in the complaint, 28 U.S.C. §§ 1331, 1337, and 1343, because neither Title VII nor the Administrative Procedure Act ("APA") serves as a predicate to jurisdiction under those statutes. The EEOC also claims that Borg–Warner lacks standing and that its claims are not ripe and are moot.

### A. LEGAL STANDARD

In ruling upon a motion to dismiss brought under Rule 12(b)(1), a court must construe the allegations in the Complaint in the light most favorable to the plaintiff. *See, e.g., Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Additionally, a court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case. *See, e.g., Herbert v. National Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); *Hohri,* 782 F.2d at 241; *Transamerica Leasing, Inc. v. La Republica de Venezuela,* 21 F.Supp.2d 47, 55 (D.D.C.1998); *Bayvue Apts. Joint Venture v. Ocwen Fed'l Bank,* 971 F.Supp. 129, 132 n. 5 (D.D.C. 1997).

### B. FEDERAL–QUESTION JURISDICTION

The first question that this court must answer in determining whether it may hear this case is whether there is a jurisdictional peg on which Borg–Warner may hang its hat, i.e., whether this case "arises under" federal law such that this court could hear this case if it were brought at

the proper time by the proper plaintiff. Borg–Warner asserts that this court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343; 42 U.S.C. §§ 2000e–5 and 2000e–6, which codify portions of Title VII; 5 U.S.C. §§ 702 and 704, which codify portions of the Administrative Procedure Act ("APA"); and 28 U.S.C. § 2201, which codifies the Declaratory Judgment Act.

### 1. Sections 1331, 1337, and 1343

Sections 1331, 1337, and 1343 of Title 28 of the United States Code grant federal district courts subject-matter jurisdiction over certain types of cases. Section 1331 provides as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1337 provides in pertinent part: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce...." 28 U.S.C. § 1337(a). Section 1343 provides in pertinent part: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ... [t]o recover damages or to secure equitable or any other relief under any Act of Congress providing for the protection of civil rights...." 28 U.S.C. § 1343(a)(4).

Borg–Warner argues that its claims under Title VII, the APA, and the Declaratory Judgment Act satisfy these provisions and thus enable this court to hear its case. Thus, the court turns to the question whether any of these Acts of Congress serves as a predicate to jurisdiction.

### 2. Title VII

■ Borg–Warner argues that this court has jurisdiction to hear this case because Borg–Warner has alleged that the EEOC acted *ultra vires*, that is, in excess of its delegated authority, in promulgating the Policy Statement and in applying it to Borg–Warner through the Determination. "[F]ederal courts have jurisdiction to re-

view 'action[s] taken in excess of delegated powers.'" *Railway Labor Executives' Association v. National Mediation Board,* 29 F.3d 655, 661 (D.C.Cir.1994) (quoting *Leedom v. Kyne,* 358 U.S. 184, 190, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)). The question "whether an agency has acted 'in excess of its delegated powers' has alternatively been phrased as whether the agency action 'on its face' violated a statute." *Dart v. United States,* 848 F.2d 217, 222 (D.C.Cir. 1988) (citation omitted). Facial challenges to agency action as allegedly " 'in excess of authority'. must not simply involve a dispute over statutory interpretation or challenged findings of fact." *Id.* at 231. Judicial review of such allegations is to be granted only in extraordinary circumstances: "to justify such jurisdiction, there must be a specific provision of the Act which, although it is [ ] clear and mandatory, [ ] was nevertheless violated.'" *Dart,* 848 F.2d at 231 (quoting *Council of Prison Locals v. Brewer,* 735 F.2d 1497, 1501 (D.C.Cir.1984)) (brackets in original).

■ Borg–Warner's claim that the EEOC has acted ultra vires is based upon section 118 of the Civil Rights Act of 1991 and the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Borg–Warner's statutory argument is as follows: "§ 118 of the 1991 Civil Rights [Act], which was incorporated into Title VII, explicitly states that '*the use of* alternative means of dispute resolution, including ... *arbitration, is encouraged* to resolve disputes under'" Title VII. Pl.'s Mem.Opp. Def.'s Mot. Dismiss at 20 (quoting Pub.L. No. 102–166, § 118) (emphasis added). Borg–Warner contends that because the EEOC's NEP, Policy Statement, and Determination serve to *discourage* Borg–Warner's use of the Arbitration Agreement, the EEOC has violated section 118. Borg–Warner also relies upon the Supreme Court's holding in *Gilmer* that an ADEA claim could "be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration

application." 500 U.S. at 23, 111 S.Ct. 1647. Borg–Warner's arguments are without merit.

Although Congress expressed a general pro-arbitration sentiment in § 118, it did not speak directly to the issue of whether *compulsory* arbitration of Title VII claims was to be encouraged. The Policy Statement itself reaffirms the EEOC's "strong support of *voluntary* alternative dispute resolution programs that resolve employment discrimination disputes in a fair and credible manner, and are entered into after a dispute has arisen." Compl.Exh. 3 at 16. Furthermore, the Supreme Court's holding in *Gilmer* did not speak directly to the issue of whether a Title VII claim may be submitted to compulsory arbitration pursuant to an employment contract. Borg–Warner's claim is more aptly characterized as "a dispute over statutory interpretation," *Dart*, 848 F.2d at 231, than as "a patent violation of agency authority" sufficient to establish jurisdiction. *Independent Cosmetic Mfrs. and Distributors v. Califano*, 574 F.2d 553 (D.C.Cir.1978). Thus, Borg–Warner's attempt to establish this court's jurisdiction under an ultra vires theory must fail.[1]

### 3. The Administrative Procedure Act

 Borg–Warner alleges that the court has jurisdiction to review the EEOC's conduct under the APA, codified at various sections of Title 5 of the United States Code.[2] Borg–Warner specifically points to section 702, which provides in pertinent part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Borg–Warner also relies upon section 704, which provides in pertinent part: "Agency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). For these purposes, " 'agency action' includes the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act...." 5 U.S.C. § 551(13). "Rule" is defined as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy...." *Id.* at § 551(4). These provisions present two fundamental questions: (1) is the action at issue "agency action" within the meaning of the statute, and (2) if so, is the agency action "final"?

In considering the first question, it is necessary to identify precisely what actions are at issue. In this case, the EEOC allegedly has engaged in the following conduct: (1) established the NEP; (2) published the Policy Statement; and (3) issued the Determination. The NEP and the Determination could be considered rules, and

---

1. In addition to arguing that the EEOC's action is reviewable because it is clearly in excess of the EEOC's authority under Title VII, Borg–Warner alludes to the idea that it is entitled to sue under Title VII because its rights under Title VII have been violated. Nothing in the statutes to which Borg–Warner cites supports the proposition that Title VII confers upon employers a cause of action against the EEOC. *See* 42 U.S.C. §§ 2000e–5 and 2000e–6. If Borg–Warner's theory—which is never made clear—is that because Congress, in enacting legislation to protect employees' civil rights, encouraged the use of arbitration, Borg–Warner consequently has a statutory right to require its employees to sign agreements to arbitrate their civil rights claims, that theory is unconvincing.

2. The Supreme Court has ruled "that the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, relying upon subsequent Supreme Court opinions, the Court of Appeals for this Circuit has stated that "jurisdiction over APA challenges to federal agency action is vested in district courts unless a preclusion of review statute ... specifically bars judicial review in this district court." *Robbins v. Reagan*, 780 F.2d 37, 42 (D.C.Cir.1985). In the absence of a statute precluding review, this court would have jurisdiction to hear this suit if the APA's own requirements for review were met.

thus agency action, because they are "agency statement[s] of general or particular applicability and future effect designed to implement ... policy." *Id.* at § 551(4). The definition of rule more soundly encompasses the Policy Statement, which is "an agency statement of general ... applicability and future effect designed to ... prescribe law or policy...." *Id.* at § 551(4).[3] The court assumes, without deciding, that each of the EEOC actions at issue may be construed as agency action for APA purposes, and turns to the question whether any of these actions may be deemed final.

The Supreme Court has established a two-prong test for determining whether agency action is final:

> First, the action must mark the "consummation" of the agency's decision making process ...—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]"

520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal citations omitted). Applying this test to the agency actions at issue in this case, the court concludes that none of the actions is sufficiently final to be subject to review under the APA.

■ The Determination fails the first prong of the two-prong finality test. By its own terms, it is "of a merely tentative or interlocutory nature," rather than "the consummation of the agency's decision making process." *Id.* The Determination states that the EEOC's District Director found "reasonable cause" to believe Borg–Warner's use of the Arbitration Agreement violated Title VII. Compl.Exh. 5. The Determination continues as follows:

> Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The Commission will also consider compensatory and punitive damages under the Civil Rights Act of 1991.

*Id.* The Determination then explains that should attempts at settlement fail, "the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission." *Id.*

By its very terms, then, the Determination expressly contemplates further agency action prior to the filing of a Complaint. It states that the Commission will consider whether to seek compensatory and punitive damages, not that the Commission has already decided to seek such damages. It anticipates an attempt to conciliate the matter. It does not constitute a finding that Borg–Warner has violated Title VII, but rather a finding that there is reasonable cause to believe that Borg–Warner has violated Title VII. In sum, the Determination appears to be not "the consummation of the agency's decision making process," but rather a "tentative or interlocutory" step in that process. *Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Thus, the Determination is not final agency action, and is not subject to review under the APA. *See Georator Corp. v. EEOC,* 592 F.2d 765 (4th Cir.1979).

■ Even were the court to determine that the NEP and the Policy Statement survive the first prong of the *Spear* finality test,[4] they would not survive the test's

---

**3.** The conclusion that the Policy Statement is an agency action finds support in the Court of Appeals' statement in *International Union* that "[t]he term 'agency action' ... embraces an agency's interpretation of its law...." *International Union, United Auto., Aerospace &*

*Agric. Implement Workers of America v. Brock,* 783 F.2d 237 (D.C.Cir.1986) (quoting *National Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689, 698 (D.C.Cir.1971)).

**4.** Borg–Warner has requested that if there is a factual issue with respect whether the Policy

second prong. The court has not been made aware of any "rights or obligations [that] have been determined" by, or "legal consequences [that] will flow" from, the EEOC's issuance of the NEP. The NEP simply states that the EEOC will make a priority the litigation of cases involving the legality of compulsory arbitration agreements. It does not place upon employers the obligation to cease using such agreements, and the court has been made aware of no legal consequences that would flow, as a result of the NEP itself, from employers' continued use of such agreements. Thus, the NEP is not final agency action, and this court does not have jurisdiction pursuant to the APA to review the NEP.

The issuance of the Policy Statement also fails to meet the second prong of the *Spear* finality test. The court is unaware of any way in which "rights or obligations have been determined" by the issuance of the Policy Statement. The Policy Statement does not confer a right upon Borg–Warner's employees to disregard the Arbitration Agreement and sue in federal court. The Policy Statement does not, as a result of its issuance, render Borg–Warner obliged to rescind the Arbitration Agreement. Nor does the Policy Statement grant the EEOC any new right to sue Borg–Warner for allegedly violating Title VII by using the Arbitration Agreement; that right pre-dates the issuance of the Policy Statement, and is not grounded in the Policy Statement.

Furthermore, no "legal consequences will flow" from the issuance of the Policy Statement. This is not a case where, as in *Spear*, the agency's action "alter[s] the legal regime to which [one] is subject. . . ." *Spear*, 520 U.S. at 178, 117 S.Ct. 1154. Borg–Warner contends that the Policy Statement has changed the legal regime to which it is subject because it will "command[ ] deference from a court that itself

might have reached a different view if it had been free to consider the issue as on a blank slate." *Ciba–Geigy Corp. v. EPA*, 801 F.2d 430, 437 (D.C.Cir.1986) (citations and internal quotation marks omitted). However, the existence of the Policy Statement did not prevent the Third and Seventh Circuits from concluding, subsequent to the issuance of the Policy Statement and contrary to the views expressed therein, that arbitration agreements imposed as a condition of employment do not violate Title VII. *See Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999); *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175 (3d Cir. 1998), *cert. denied*, 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999). The Policy Statement would change the legal regime to which Borg–Warner is subject only if its position were accepted by the courts. The Third and Seventh Circuit decisions indicate that courts do not feel compelled to accept that position. Thus, it cannot fairly be said that legal consequences flow from the Policy Statement merely because the Policy Statement is afforded deferential consideration by the courts.

Nor can it fairly be said that legal consequences flow from the terms of the Policy Statement itself. In *Chemical Manufacturers Association v. EPA*, this court found that an EPA policy statement was not final and thus was not subject to judicial review under the APA. 26 F.Supp.2d 180 (D.D.C.1998) (Oberdorfer, J.). In that case, the court stated that "[t]he policy's plain language . . . establishes that it does 'not command anyone to do anything or to refrain from doing anything,' does 'not subject anyone to any civil or criminal liability,' and does not 'create . . . legal rights or obligations.' " *Id.* at 185 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523

Statement or the NEP mark the consummation of the agency's decisionmaking process, that it be allowed to conduct discovery on that issue. *See* Trans. of Mot. Hearing

("Trans."), 12/17/99 at 21. The court's assumption that Borg–Warner has prevailed on that issue obviates the need for discovery.

U.S. 726, 118 S.Ct. 1665, 1670, 140 L.Ed.2d 921 (1998) (finding plaintiff's claim not ripe for review)). This is an apt description of the policy at issue here. This is not a case in which the agency has promulgated regulations that require Borg–Warner to change its behavior. *Cf. Abbott Labs. v. Gardner*, 387 U.S. 136, 138–39, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Gardner v. Toilet Goods Ass'n, Inc.*, 387 U.S. 167, 168–71, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). This is not a case in which the agency's "pronouncements have immediate consequences on those subject to the statute [it enforces]...." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of America v. Brock*, 783 F.2d 237, 241 (D.C.Cir.1986). It is also not a case in which Borg–Warner, having relied upon a prior agency ruling in conducting its business affairs, has sought an opinion from the agency regarding the extent to which an intervening statutory amendment has affected its ability to rely upon the agency's prior ruling. *Cf. National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 699 (D.C.Cir.1971). In this case, the Policy Statement requires nothing of Borg–Warner, and does not supersede any prior agency ruling on which Borg–Warner had justifiably relied. The Policy Statement will remain merely hortatory unless its position is adopted by a court. Thus, the Policy Statement is not an agency action from which legal consequences flow, and it is not subject to review under the APA.[5]

For the foregoing reasons, the court concludes that it does not have federal-question jurisdiction under the APA to hear this suit.

### 4. The Declaratory Judgment Act

■ Borg–Warner advances a final jurisdictional predicate: the Declaratory Judgment Act. The Declaratory Judgment Act, codified at 28 U.S.C. § 2201, provides in pertinent part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. Although "the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction, ..." *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995), "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), *superseded by statute in irrelevant part as stated in Department of Revenue of State of Iowa v. Investment Finance Mgmt. Co., Inc.*, 831 F.2d 790, 791 (8th Cir.1987). The Court of Appeals for this Circuit has reinforced this approach, stating that "in declaratory judgment actions, 'federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant.'" *Commercial Union Ins. Co. v. United States*, 999 F.2d 581 (D.C.Cir. 1993) (citation omitted).

■ Under the analysis adopted by the Supreme Court in *Franchise Tax Board* and by the Court of Appeals in *Commer-*

---

5. The court has also considered whether the EEOC's decision not to bring suit against Borg–Warner on the Lee charge is reviewable under the APA. There is a rebuttable presumption that "an agency's decision not to prosecute or enforce" is unreviewable under the APA. *See id.* at 244 (quoting *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985)). In this case, Borg–Warner has not in any way rebutted the presumption against the reviewabilty of the EEOC's decision not to prosecute.

*cial Union,* this court has federal-question jurisdiction over Borg–Warner's declaratory judgment action. In this case, had defendant EEOC brought a coercive action against Borg–Warner alleging that Borg–Warner's use of the Arbitration Agreement violated Title VII, there is no doubt that this court would have had jurisdiction to hear the case. Thus, the court has federal-question jurisdiction over Borg–Warner's request for a declaratory judgment that its use of the compulsory arbitration agreement does not violate Title VII, and may hear the case if the action is justiciable. In determining whether the action is justiciable, the court first addresses the question whether Borg–Warner has standing to bring a declaratory judgment action, a proposition which the EEOC disputes.

## C. STANDING

 The EEOC claims that Borg–Warner lacks standing. To establish standing under Article III, a plaintiff must establish the following: 1) that the plaintiff suffered an "injury in fact"; 2) that the injury is "fairly traceable to the challenged action of the defendant"; and 3) that the injury will "likely" be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citation and internal quotation marks omitted); *see also Animal Legal Defense Fund, Inc. v. Glickman,* 154 F.3d 426 (D.C.Cir.1998) (en banc), *cert. denied sub nom. National Ass'n for Biomedical Research v. Animal Legal Defense Fund,* —— U.S. ——, 119 S.Ct. 1454, 143 L.Ed.2d 541 (1999).

 The court need not consider whether Borg–Warner has established the first two prerequisites for standing, as it is clear that Borg–Warner has not established the third prerequisite. In determin-

ing that Borg–Warner has not shown that the injury it has allegedly suffered will likely be redressed by a favorable decision, the court has considered the likely effect of declaratory relief. To grant declaratory relief in this case would do no more than add this district court's voice to the cacophony of conflicting Circuit Court opinions on the issue whether compulsory pre-dispute arbitration agreements violate Title VII. *See, e.g., Seus v. John Nuveen & Co.,* 146 F.3d 175 (3d Cir.1998) (holding that such agreements do not violate Title VII), *cert. denied,* —— U.S. ——, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361 (7th Cir.1999) (same), *cert. denied,* —— U.S. ——, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999); *Cole v. Burns Int'l Security Services,* 105 F.3d 1465 (D.C.Cir.1997) (same); *cf. Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182 (9th Cir.1998) (holding that such agreements violate Title VII), *cert. denied,* —— U.S. ——, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998). If favorable holdings by the District of Columbia Circuit, the Third Circuit, and the Seventh Circuit, among others, do not redress the uncertainty of which Borg–Warner complains, then a declaration from this district court will not redress that uncertainty.[6] Thus, Borg–Warner lacks standing to sue for declaratory relief.

Even if this court were not required to dismiss Borg–Warner's action for declaratory relief for lack of standing, this court would exercise its discretion to do so. As the Supreme Court explained in *Wilton v. Seven Falls Co.:*

> If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to

---

6. During oral argument, the court asked Borg–Warner's counsel to respond to the EEOC's argument that a declaration that Borg–Warner's arbitration agreement is lawful would "not redress the injury that is there in light of the uncertainty in the law because of the split of opinion in the circuits." Trans. 12/17/99 at 15. Borg–Warner's response detailed the possible benefits of injunctive relief, but did not point to any likely benefits of declaratory relief. *See id.* at 15–20.

proceed to the merits before staying or dismissing the action.

515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). In this case, a declaratory judgment would serve no useful purpose, as it would not change the law in the Ninth Circuit, or otherwise redress Borg–Warner's alleged injury. As there is no jurisdictional basis for rendering any other type of relief, the court shall dismiss the case.[7]

### III. CONCLUSION

For the foregoing reasons, the EEOC's motion to dismiss is granted. An appropriate order accompanies this memorandum.

### ORDER

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this day, it is this 4th day of January, 2000, hereby

**ORDERED and ADJUDGED** that judgment is entered in favor of the defendant; and it is further

**ORDERED and ADJUDGED** that the complaint in this case is dismissed.

---

7. The court's reasoning makes it unnecessary to consider whether Borg–Warner's claims are ripe and not moot. Thus, the court does not reach those issues.