EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

LUCE, FORWARD, HAMILTON &
SCRIPPS, LLP, Defendant.

No. CV00–01322(FMC)(AIJx).

United States District Court,
C.D. California.

Nov. 21, 2000.

Pamela J. Thomason, Peter F. Laura, Anat Ehrlich, U.S. Equal Employment Opportunity Commission, Los Angeles District Office, Los Angeles, CA, for U.S. Equal Employment Opportunity Commission, plaintiff.

Kelly Capen Douglas, Julie A Vogelzang, Michael L Jensen, Luce Forward Hamilton & Scripps, San Diego, CA, for Luce Forward Hamilton & Scripps, defendant.

1. Lagatree actually worked for the Defendant two days, from September 16–18, 1997.

2. Although it appears to assert that Lagatree was terminated from his employment after

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

COOPER, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment: specifically, the Motion for Partial Summary Judgment of Plaintiff Equal Employment Opportunity Commission ("EEOC") filed on August 25, 2000, and the Motion for Summary Judgment of Defendant Luce, Forward, Hamilton & Scripps, LLP ("LFHS") filed on October 6, 2000. For the reasons stated and in the manner stated herein, Plaintiff's Motion for Partial Summary Judgment is hereby **GRANTED IN PART AND DENIED IN PART,** and Defendant's Motion for Summary Judgment is hereby **GRANTED IN PART AND DENIED IN PART.**

### I. Uncontroverted Facts

The parties agree that the relevant facts in this case are undisputed. In September 1997, Donald Lagatree applied for and was offered a full-time legal secretary position with the LFHS. Lagatree was asked to report to work on September 16, 1997. On that day, Lagatree was presented with an offer letter [1] which set forth the terms and conditions of his employment, "should [he] accept." The offer letter also contained an arbitration clause. Under this provision, Lagatree would agree to submit all "claims arising from or related to [his] employment or termination of [his] employment" to binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.*

On September 18, 1997, Lagatree informed the Defendant that he thought the arbitration clause was "unfair" and that he would not sign the offer letter. Defendant terminated Lagatree's conditional employment.[2]

being hired and working for two days, the EEOC agrees that, for purposes of the present motions, LFHS did not terminate Lagatree's employment; rather, it rejected his applica-

On or about February 13, 1998, Lagatree filed an action in the Los Angeles Superior Court against the Defendant ("the prior action"). Lagatree's Complaint in the prior action alleged that he was wrongfully terminated in violation of public policy for refusing to waive his constitutional rights to a jury trial and a judicial forum. Lagatree also asserted that his discharge violated the California Unfair Competition Law, Cal.Bus. & Prof.Code §§ 17200–17209, and Cal.Civ.Code § 1668, which prohibit parties from contracting away liability for fraudulent, intentional, or negligent violations of statutory law. Lagatree sought lost wages, damages for emotional distress, and punitive damages.

The trial court in the state court action sustained the Defendant's demurrer, agreeing that Defendant did not violate public policy by discharging employees who refused to sign pre-dispute arbitration agreements as a condition of employment. The Court of Appeals affirmed the lower court's holding.[3] That Court reasoned that in order for Lagatree's termination to be wrongful, the right underlying Lagatree's wrongful termination claim must be one that could not be bargained away or circumvented by agreement. The Court concluded, however, that an individual's constitutional right to a jury trial and a judicial forum for the resolution of disputes are rights that are subject to waiver. The California Supreme Court denied review.

The EEOC brings the present action on behalf of Lagatree based on the facts set forth above.[4] The EEOC's Complaint alleges that Defendant engaged in unlawful retaliatory activity when Defendant failed to hire Lagatree in violation of § 704(a) of Title VII, § 4(d) of the Age Discrimination in Employment Act, § 503(a) of the Americans with Disability Act, and § 15(a)(3) of the Equal Pay Act. The EEOC seeks lost wages, lost benefits, and damages for emotional distress on Lagatree's behalf. The EEOC also asks this Court for punitive damages as well as a permanent injunction on behalf of the public interest precluding Defendant from conditioning employment on a prospective employee agreeing to arbitrate all and any future claims against the Defendant.[5]

## II. Summary Judgment Standard

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.Rule Civ.Pro. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive

tion. Both such actions are adverse employment actions under the retaliation provisions of the federal antidiscrimination statutes.

3. Prior to working at LFHS, Lagatree was employed with the law firm of Kessal, Young, & Logan ("Kessel Young") for approximately three (3) years. Lagatree had been terminated, however, when he refused to sign an arbitration agreement.

At the same time Lagatree commenced a state court action against Defendant, Lagatree also sued Kessal Young alleging the same cause of action. The case against Kessal Young was similarly dismissed on demurrer.

Lagatree appealed in both cases. The Court of Appeal consolidated Lagatree's case against Kessal Young and the Defendant for the purposes of appeal. *See Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal.App.4th 1105, 88 Cal.Rptr.2d 664 (1999).

4. On March 4, 1998, Lagatree filed a charge of discrimination with the EEOC alleging that he had been terminated in retaliation for refusing to sign the offer letter.

5. LFHS intends to continue to require its employees, as a condition of employment, to execute a mandatory arbitration agreement. (Berry Depo. at 21).

law; if the fact may affect the outcome, it is material. *Id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude the use of summary judgment. *Harper v. Wallingford,* 877 F.2d 728 (9th Cir.1989).

The Court construes all evidence and reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Brookside Assocs. v. Rifkin,* 49 F.3d 490, 492–93 (9th Cir.1995).

### III. Res *Judicata* and Collateral Estoppel (Claim Preclusion and Issue Preclusion)

Defendant argues that the EEOC's action is barred because of Lagatree's prior state court litigation against Defendant. In that litigation, Plaintiff asserted wrongful discharge in violation of public policy based on his constitutional right to a jury trial and a judicial forum for the resolution of disputes.

### A. Standards

Defendant correctly noted that federal courts must give a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *See Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

■ Under California law, *res judicata,* or claim preclusion, bars relitigation of a claim when a prior action adjudicated 1) the same claim, 2) resulted in a final judg-

ment on the merits, and 3) the party against whom the claim is asserted was a party to or was in privity with a party to the prior action. *Cal. State Auto. Ins. Ass'n v. Superior Court,* 50 Cal.3d 658, 268 Cal.Rptr. 284, 788 P.2d 1156 (1990); *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978); *Victa v. Merle Norman Cosmetics, Inc.,* 19 Cal.App.4th 454, 24 Cal.Rptr.2d 117 (1993).

■ Collateral estoppel precludes a party from relitigating an issue that was litigated and decided in a prior proceeding when 1) the issue sought to be precluded is identical to that decided in the former proceeding, 2) the issue was actually litigated, 3) the issue was necessarily decided, 4) there was a final judgment on the merits, and 5) the party was the same as, or was in privity with, a party to the prior proceeding. *Gikas v. Zolin,* 6 Cal.4th 841, 25 Cal.Rptr.2d 500, 863 P.2d 745 (1993).

### B. *Res Judicata*

**1. The Parties Agree that the Prior Action Resulted in a Final Judgment on the Merits.**

In its Opposition to LFHS's Motion, the EEOC concedes that the prior action resulted in a final judgment on the merits.[6]

**2. The Claim Asserted In the Present Action on Behalf of Lagatree in his Individual Capacity Is Identical to the Claim Asserted in the Prior Action.**

■ The EEOC's claims on behalf of Lagatree in the present action are identical to the claims presented in the prior action, even though these claims are based on wholly different legal theories. California follows the "primary right" theory of what constitutes a cause of action. Under this theory, a claim, or "cause of action" is based on the harm suffered, not the particular theory asserted by the litigant. *Peis-*

---

6. The EEOC states, however, that it contests that the final judgment entered in the prior

action has any relevancy to the present action.

*er v. Mettler,* 50 Cal.2d 594, 328 P.2d 953 (1958). The primary rights theory provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. *Crowley v. Katleman,* 8 Cal.4th 666, 34 Cal.Rptr.2d 386, 881 P.2d 1083 (1994). The violation of a single primary right gives rise to but a single cause of action. *Id.* As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. *Id.* "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." *Id.* at 668–69, 34 Cal.Rptr.2d 386, 881 P.2d 1083. The primary right theory applies when a previous action has resulted in a final judgment on the merits and a defendant in a second action asserts that the second action is precluded under the principles of *res judicata. Id.*

California courts, in determining whether the primary right at issue is the same in two actions, have focused on both the nature of the dispute and the nature of the damages sought.

In focusing on the nature of the dispute, a California appellate court held that the same primary rights were implicated in two separate actions where both actions were brought to resolve the disputes between the parties about the public's right of access to a disputed tract of land. *Citizens For Open Access to Sand and Tide, Inc. v. Seadrift Ass'n,* 60 Cal.App.4th 1053, 71 Cal.Rptr.2d 77 (1998) (so holding despite the two actions were premised on wholly different legal theories). *See also Weikel v. TCW Realty Fund II Holding*

*Co.,* 55 Cal.App.4th 1234, 65 Cal.Rptr.2d 25 (1997) (holding that all claims regarding validity and scope of an easement involved the same primary right asserted in a prior action). Similarly, in *Johnson v. American Airlines,* 157 Cal.App.3d 427, 203 Cal. Rptr. 638 (1984),[7] the court held that a flight attendant's claims for sex discrimination were barred by an earlier class action consent decree, notwithstanding the fact that the flight attendant's claims were premised on different legal theories. The court held that the primary right allegedly violated was the right to be free from employment sex discrimination in the employer's application of an involuntary maternity leave policy. *Id.*

In focusing on the nature of the harm alleged, a California appellate court held that a federal discrimination claim and a state breach of employment contract claim were based on the same primary right because the harm alleged in both instances was being rejected for a job. *Balasubramanian v. San Diego Community College,* 80 Cal.App.4th 977, 95 Cal.Rptr.2d 837 (2000).

Still focusing on the nature of the harm alleged, in *Agarwal v. Johnson,* 25 Cal.3d 932, 160 Cal.Rptr. 141 (1979), the court held that different primary rights were implicated in a class action suit under federal civil rights laws and a subsequent individual suit based on defamation and intentional infliction of emotional distress. The court reasoned that the subsequent action sought damages that were distinct from the class action suit. The court also noted that even though the two actions were based on the same facts, it did not necessarily follow that the same primary right was implicated. *Accord, Craig v.*

---

**7.** *Seadrift* and *Johnson* are to be contrasted with *Rothschild v. Tyco Int'l,* 83 Cal.App.4th 488, 99 Cal.Rptr.2d 721 (2000). In *Rothschild,* the court held that an employee's claims under California's False Claims Act and a subsequent suit under California's Unfair Competition Law involved two separate primary rights and two separate types of damages. In the False Claims Act claim, the

plaintiff acted as an arm of the government to assist in redressing the defendant's wrongful action of making misrepresentations in claims to the government. Conversely, in the Unfair Competition Law claim, the plaintiff acted on behalf of herself and others in asserting the harm resulting from the defendant's wrongful actions in using substandard parts in water systems it manufactured.

*County of Los Angeles,* 221 Cal.App.3d 1294, 271 Cal.Rptr. 82 (1990) (holding that where the previous action sought only reinstatement, a subsequent action for damages involved a different primary right). *See also Acuna v. Regents of University of California,* 56 Cal.App.4th 639, 65 Cal. Rptr.2d 388 (1997) (finding that claims under state discrimination law were based on the same primary right as were claims under federal discrimination law).

Here, the claims asserted in the prior action were based on wrongful termination in violation of public policy based on Lagatree's constitutional right to a jury trial and a judicial forum for the resolution of disputes. Lagatree unsuccessfully sought front and back pay, damages for emotional distress and punitive damages. The primary right Lagatree sought to protect was his ability to begin his employment with LFHS without being required to agree to arbitrate any future employment disputes. The primary duty LFHS is alleged to have breached is the duty to refrain from impermissibly rejecting applicants who refuse to enter into its mandatory arbitration agreement.

■ In the present action, the EEOC asserts claims on behalf of Lagatree based on unlawful retaliation. This legal theory is different from that asserted in the prior action. However, under this theory, the EEOC seeks lost wages and damages for emotional distress on behalf of Lagatree. These damages are exactly the same damages sought in the prior action. The primary right Lagatree seeks to protect in the present action is his ability to begin his employment with LFHS without being required to agree to arbitrate any and all claims arising from and related to Lagatree's employment with LFHS. This is precisely the same primary right Lagatree sought to vindicate in the prior action. The primary duty LFHS is alleged to have breached is the duty to refrain from impermissibly refusing to hire applicants who will not enter into its mandatory arbitration agreement. This is precisely the

same primary duty LFHS is alleged to have breached in the prior action. Accordingly, the EEOC, on behalf of Lagatree, is impermissibly attempting to assert the same claims as Lagatree asserted in the prior action.

Summary judgment in favor of Defendant is hereby granted to the extent the claims asserted in the Complaint seek monetary relief.

**3. The EEOC Is in Privity with Lagatree and the Present Action is Barred to the Extent it Asserts Claims on Behalf of Lagatree in his Individual Capacity.**

■ The present action filed by the EEOC sets forth two distinct types of claims and seeks two distinct types of remedies. On the one hand, the EEOC asserts claims for damages on behalf of the individual Lagatree, who it contends was injured by LFHS's unlawful retaliation. On the other hand, the EEOC seeks injunctive relief, on behalf of Lagatree and the public, and requests that LFHS be enjoined from conditioning employment on a prospective employee agreeing to arbitrate future employment claims against LFHS. A brief review of the EEOC's role in enforcing the nation's antidiscrimination laws, as well as a review of relevant case law, leads the Court to the conclusion that the EEOC is in privity with Lagatree as to his individual claims, but not as to its claim for injunctive relief.

**a) The EEOC's Enforcement Role**

The EEOC has enforcement power over Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Age Discrimination In Employment Act ("ADEA"), and the Americans with Disabilities Act ("the ADA"), and the Equal Pay Act ("EPA").

Title VII itself imposes or allows very few limitations on the EEOC's power to sue in federal court to eliminate, for the public benefit, unlawful employment discrimination. Under Title VII and the

ADA,[8] once an individual files a charge alleging unlawful employment practices, the EEOC must investigate the charge and determine whether there is "reasonable cause" to believe that it is true. *See* 42 U.S.C. § 2000e–5(b). By filing a charge, an individual does not file a complaint seeking relief, but merely informs the EEOC of possible discrimination. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 68, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984). If the EEOC finds reasonable cause to believe discrimination occurred, it must "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* at 88, 104 S.Ct. 1621. If the EEOC cannot secure an acceptable conciliation agreement from the employer, it may bring a civil action against a private employer. 42 U.S.C. § 2000e–5(f). If the court agrees with the EEOC that the employer has intentionally engaged in unlawful discrimination, the court may order injunctive relief and such remedies as the reinstatement or hiring of employees, back pay, and compensatory and punitive damages. See 42 U.S.C. §§ 1981a(a)(1), 2000e–5(g)(1). During the first 180 days after the filing of a charge of discrimination, the EEOC retains "exclusive" jurisdiction over the subject matter of that charge. *General Tel. Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

### b) Case Law Regarding the EEOC's Role in Seeking Relief on Behalf of Individual Aggrieved Parties

### 1) Claims for Individual Relief

The Third Circuit has held that where individuals sued their employer for age discrimination based on an employer's requirement that they sign waivers as a condition of receiving more favorable retirement pensions, the EEOC was precluded from asserting claims on behalf of these individuals because the EEOC was in privity with these individuals. *EEOC v. United States Steel*, 921 F.2d 489 (3d Cir.1990).

Similarly, applying *United States Steel*, the Seventh Circuit has held that the EEOC is in privity with the employee for whom it seeks individual benefits. *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286 (7th Cir.1993). In *Harris Chernin*, the Court held that principles of *res judicata* precluded the EEOC from seeking monetary relief and reinstatement on behalf of the employee who unsuccessfully asserted a similar claim against his employer in a previous action. *Id.*

The Court finds that the facts of this case parallel those in *United States Steel* and *Harris Chernin*. Accordingly, the Court holds that the EEOC was in privity with Lagatree with respect to the claims for individual relief.

Cases cited by the EEOC in support of its contention that it was not in privity with Lagatree do not convince the Court that a contrary holding is appropriate. The EEOC relies on *Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal.App.4th 454, 24 Cal.Rptr.2d 117 (1993); *EEOC v. Frank's Nursery and Crafts*, 177 F.3d 448 (6th Cir.1999); and *Bechtel Petroleum v. Webster*, 796 F.2d 252 (9th Cir.1986).

In *Victa*, the court held that a prior suit by the EEOC asserting federal claims did not bar the plaintiff's state law claims because the parties were not in privity. *Id.* (noting that the EEOC did not have standing to assert the plaintiff's state law claims). The Court based its decision on the enforcement structure of the Age Discrimination in Employment Act ("ADEA"), and reasoned that it was the intent of Congress in enacting the ADEA that the EEOC not be in privity with the aggrieved individual. In the present case, Lagatree, not the EEOC sued first. Therefore, the *Victa*'s court concerns regarding the em-

---

8. The Americans with Disabilities Act incorporates the enforcement "powers, remedies, and procedures" of Title VII. 42 U.S.C. § 12117(a) (incorporating by reference 42 U.S.C. §§ 2000e–4, 2000e–5, 2000e–6, 2000e–8, 2000e–9).

ployee's lack of control over the EEOC proceedings are not applicable here.

In *Franks Nursery*, the Sixth Circuit held that an employee's arbitration agreement did not bar the EEOC from asserting Title VII claims on her behalf; however, the court found that *res judicata* principles were inapplicable and therefore *Franks Nursery* was not decided on privity grounds. Instead, the court reasoned that the individual had no authority to bind the EEOC to arbitration; therefore, the EEOC was not precluded from asserting claims on the employee's behalf. This case does not support the EEOC's argument that it was not in privity with Lagatree.

In *Bechtel Petroleum*, the Ninth Circuit held that the Secretary of Labor, by virtue of his suit for injunctive relief, was not in privity with employees who later sought damages for violations of state wage and hour laws. The Ninth Circuit reasoned that the interests of the Secretary did not significantly overlap with the aggrieved parties and that the Secretary is not authorized to sue for damages on behalf of individual aggrieved employees. Here, however, the interests of Lagatree are aligned with the EEOC, and the EEOC is authorized to sue for damages on behalf of individual aggrieved employees. This case does not support the EEOC's argument that it was not in privity with Lagatree.

### 2) Claims for Injunctive Relief

Although the EEOC is in privity with Lagatree with respect to the claims for individual relief on behalf of Lagatree, the same is not true for the EEOC's claims for injunctive relief pursuant to its duty to vindicate the public's interest in preventing employment discrimination.

The EEOC's enforcement powers are intended to supplement, rather than to supplant, an aggrieved individual's right to maintain a private action under Title VII. *General Telephone Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). The EEOC is not merely a proxy for individual victims of discrimination; rather, the EEOC is guided by "the overriding public interest in equal employment opportunity ... asserted through direct Federal enforcement." *Id.* at 326, 100 S.Ct. 1698 (internal citations and quotation marks omitted). When the EEOC acts, although at the request of and for the benefit of specific individuals, it acts to "vindicate the public interest in preventing employment discrimination." *Id.* at 318, 100 S.Ct. 1698.

■ In this case, therefore, the EEOC fulfills two separate roles: First, it seeks monetary relief on behalf of Lagatree for alleged retaliation against him in an individual capacity, and second, it seeks injunctive relief in its role to protect the public interest in preventing employment discrimination. Courts across the nation are in agreement that the EEOC may pursue an action for injunctive relief even when the employee on whose behalf the injunction is sought is precluded from seeking further relief.

■ The Ninth Circuit has held that the EEOC's right of action seeking to vindicate the public's interest is independent of an employee's private action rights. *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539 (9th Cir.1987). In *Goodyear*, the Ninth Circuit held that an employee's settlement agreement with her employer did not preclude the EEOC's subsequent action against the employer seeking injunctive relief.[9] *Id.* The *Goodyear* court

9. The Ninth Circuit was not presented with an issue of *res judicata in Goodyear* because the employee and employer entered into a private settlement agreement instead of litigating the employee's claims; rather, the *Goodyear* Court was presented with a mootness issue. Nevertheless, *Goodyear* is instructive as to the Ninth Circuit's view on the roles of the EEOC in vindicating private rights and the public's interest.

The Court finds another "mootness" case instructive as well. In *EEOC v. United Parcel Service*, 860 F.2d 372 (1988), the Tenth Circuit held that the EEOC may challenge an ongoing discriminatory practice even though the individual plaintiff had settled his claim

quoted *General Telephone*, 446 U.S. at 326, 100 S.Ct. 1698: "The EEOC 'is not merely a proxy for victims of discrimination,' but 'acts also to vindicate the public interest in preventing employment discrimination.'" *Goodyear*, 813 F.2d at 1542. Significantly, the *Goodyear* court also noted: "Recognizing that the EEOC sues to vindicate the public interest, two circuits [the Fifth and the Sixth] have held that res judicata principles do not bar the EEOC from bringing an action against an employer even after its employees have settled their private claims." *Id.* at 1542–43 (citations omitted).

Other Circuits have joined in this holding subsequent to *Goodyear*. The Second Circuit has noted that "[C]ircuit courts have uniformly held that the EEOC may not seek monetary relief in the name of an employee who has waived, settled, or previously litigated the claim." *EEOC v. Kidder, Peabody & Co., Inc.*, 156 F.3d 298, 301 (1998) (holding that arbitration agreement between the employee and employer precluded EEOC from seeking monetary relief on behalf of employee but not injunctive relief).

The Seventh Circuit has held that although the EEOC was precluded from asserting a claim for individual monetary and injunctive relief by principles of *res judicata*, the EEOC was not precluded from seeking an injunction against further violations. *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286 (7th Cir.1993).

Accordingly, the Court holds that the EEOC is not barred by *res judicata*[10] from pursuing its claims for injunctive relief.[11]

## IV. Injunctive Relief Is Appropriate

█ The EEOC argues that LFHS should be enjoined from requiring its employees to enter into mandatory arbitration agreements because this requirement is unlawful under federal civil rights laws. The EEOC alleges that LFHS unlawfully retaliated against Lagatree for his refusal to sign the arbitration agreement. For its part, LFHS argues that requiring its employees to enter into mandatory arbitration agreements is not unlawful, that Ninth Circuit authority regarding mandatory arbitration agreements is wrongly decided, that California law specifically allows employers to require employees to agree to arbitrate any claims against the employers, and that, in any event, LFHS did not unlawfully retaliate against Lagatree.

A brief review of relevant case law is in order.

### A. Relevant Case Law

#### 1. The United States Supreme Court's Decisions Regarding Mandatory Arbitration Agreements in Employment—*Gilmer, Alexander,* and *Circuit City*

In *Alexander v. Gardner–Denver*, the court held that a plaintiff was not precluded from filing a Title VII lawsuit against his employer by having earlier submitted

with the employer. The Court held that the EEOC's right of action is more that a "mere" representative suit; rather, the EEOC's right of action seeks to vindicate public interests. *Id.*

10. The Court agrees with Defendant that California courts have been less than clear in analyzing and distinguishing between the individual elements of *res judicata* and collateral estoppel; these elements overlap to a significant extent. Perhaps for that reason, neither party has provided a meaningful analysis of the "actually litigated" or "necessarily decided" elements of collateral estoppel. Accordingly, the Court has limited its discussion to the elements of *res judicata*.

11. The EEOC argues that California's public policy exception to the *res judicata* bar should be applied here, citing *Consumers Lobby Against Monopolies v. Public Utilities Comm'n*, 25 Cal.3d 891, 160 Cal.Rptr. 124, 603 P.2d 41 (1979). The public policy exception to *res judicata* applies when an overriding public policy dictates that a courts should, in furtherance of that public policy, refuse to apply doctrines of *res judicata*. The public policy exception is inappropriate here because *res judicata* bars only the EEOC's claims for individual relief on behalf of Lagatree; the EEOC may still seek injunctive relief on behalf of the public's interest.

his claim to final arbitration under a collective bargaining agreement. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In so holding, the court noted the distinctly separate nature of the contractual and statutory rights. *Id.* at 50, 94 S.Ct. at 1020. The court determined that the arbitration process was intended to address the employee's contractual rights under the collective bargaining agreement but not the affected employee's statutory rights. *Id.* at 49–50, 94 S.Ct. at 1020–1021. The court noted that the union may waive certain types of statutory rights that are related to "collective activity" such as the right to strike. *Id.* at 51, 94 S.Ct. at 1021. However, because Title VII "stands on plainly different ground"; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Of necessity, the rights conferred can form no part of the collective bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstance, an employee's rights under Title VII are not susceptible of prospective waiver. *Id.* at 51, 94 S.Ct. at 1021. Prior to *Gilmer*, courts often cited to *Gardner–Denver* for the proposition that mandatory arbitration agreements were unenforceable.

Seventeen years later, the Supreme Court decided *Gilmer v. Interstate/Johnson Lane Corp.* In *Gilmer*, the court held that an agreement to arbitrate a statutory claim is generally enforceable. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). This case appears to be a departure from the earlier *Garder–Denver* decision.

In *Gilmer*, the plaintiff had been required by his employer to register as a securities representative with the New York Stock Exchange. The registration application contained an agreement to arbitrate "any dispute, claim or controversy . . . arising between him and his employer" that is required to be arbitrated under the rules of the NYSE. *Id.* at 23, 111 S.Ct. at

1650–51. The NYSE rules required arbitration of any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative. The plaintiff in *Gilmer* alleged that he was discharged in violation of the Age Discrimination Act of 1967 (ADEA). The employer moved to compel arbitration.

The Supreme Court first noted the "liberal federal policy favoring arbitration." *Id.* at 24, 111 S.Ct. at 1651. The court then considered the statutory claims made the subject of the arbitration agreement. The court stated that "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory right at issue." *Id.* at 26, 111 S.Ct. at 1652. Because the court determined that the arbitration clause was broad enough to encompass statutory claims, and because the plaintiff had not demonstrated that Congress intended to preclude the waiver of a judicial forum for the statutory ADEA claim, the Supreme Court upheld the arbitration clause.

The Court distinguished *Gilmer* from *Gardner–Denver*. "[T]here are several important distinctions between the Gardner–Denver line of cases and the case before us." *Id.* at 35, 111 S.Ct. at 1657. First, *Gardner–Denver* did not involve the enforceability of an agreement to arbitrate statutory claims but instead raised the issue as to whether arbitration of contract based claims precluded subsequent judicial resolution of statutory claims. The court noted that because the plaintiff in *Gardner–Denver* had not agreed to arbitrate his statutory claims, the arbitrator was not allowed to resolve those claims, and thus arbitration in those cases "understandably was held not to preclude subsequent statutory actions." *Id.* Moreover, *Gardner–Denver* involved collective bargaining agreements and the union represented the plaintiff in the drafting of the collective

bargaining agreement. Therefore the tension in *Gardner–Denver* was concerning the "tension between collective representation and individual statutory rights, a concern not applicable in the present case." *Id.* Finally, the *Gilmer* court noted that *Gardner–Denver* was not decided under the Federal Arbitration Act ("FAA"), which reflects liberal federal policy favoring arbitration. *Id.*

Although of limited relevance to the present dispute, in *Circuit City Stores, Inc. v. Adams*, 194 F.3d 1070 (9th Cir. 1999), an employer sought to compel arbitration of an employee's claim pursuant to the Federal Arbitration Act ("FAA"). The Ninth Circuit held that the FAA does not apply to contracts of employment, and reversed the district court's order compelling arbitration. The United States Supreme Court granted certiorari on the question of whether the Federal Arbitration Act, 9 U.S.C. § 1 et seq., applies to contracts of employment. *Circuit City Stores, Inc. v. Adams,* — U.S. —, 120 S.Ct. 2004, 146 L.Ed.2d 955 (2000). The *Circuit City* case is currently pending decision before the Supreme Court.

## 2. The Ninth's Circuit Interpretation—*Duffield*

In *Duffield,* the Ninth Circuit held that, under the Civil Rights Act of 1991, employers may not compel individuals to waive their Title VII right to a judicial forum. *Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182, 1185 (9th Cir.1998), *cert. denied,* 525 U.S. 982, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998). Contrary to Defendant's argument that *Duffield* held only that mandatory arbitration agreements are unenforceable, the holding of *Duffield* is broad: "We hold that, under the Civil Rights Act of 1991, employers may not by [conditioning employment on the execution of mandatory arbitration agreements]

compel individuals to waive their Title VII right to a judicial forum." *Id.*

The plaintiff in *Duffield* asserted sex discrimination and harassment claims under Title VII and the California Fair Employment and Housing Act ("FEHA"). The defendant sought to compel arbitration pursuant to an arbitration clause contained in a Form U–4.[12] The plaintiff, however, argued that the Civil Rights Act of 1991, which amended Title VII, precluded compulsory arbitration of her discrimination claims. *Id.* at 1186.

The Court agreed with plaintiff and concluded that the Congress intended to preclude *compulsory* arbitration of Title VII claims by passing the Civil Rights Act of 1991. *Id.* at 1185. The Court reasoned that this Congressional intent was demonstrated in the text of the Act, specifically Section 118, and its legislative history. *Id.* Section 118 provides that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolutions, including . . . arbitration is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this Title." *Id.* at 1191.

The *Duffield* court reasoned that the Act's general purpose was to enlarge the substantive and procedural rights of victims of employment discrimination. The court noted that Congress mandated that courts construe Title VII to expand and increase an employee's rights and the possible remedies available to plaintiffs. *Id.* at 1190. The court further reasoned that reading Section 118 as allowing mandatory arbitration is contrary to the congressional mandate to expand and increase employees' rights. Moreover, the court reasoned, Section 118 merely encourages an employee to *voluntarily* agree to arbitrate. *Id.* The court stated that the restrictive language "where appropriate and to the extent authorized by law" evinced Congress' intent to restrict arbitration to those cases

---

**12.** The plaintiff was a registered securities industry employee for the New York Stock Exchange ("NYSE"). The NYSE application form, or the Form U–4, contained the arbitration clause.

in which the employee voluntarily chooses to do so. *Id.* at 1193.

### 3. The California Supreme Court's Answer to *Duffield—Armendariz v. Foundation Health Psychcare Services, Inc.*

The California Supreme Court disagreed with *Duffield* and held that Title VII and FEHA claims may be subjected to mandatory arbitration agreements in *Armendariz v. Foundation Health Psychcare Services Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). In *Armendariz*, the plaintiff brought discrimination claims under FEHA and Title VII. As in previous cases, the defendant sought to compel arbitration pursuant to an arbitration agreement contained in an employment contract. The employee objected and argued that the arbitration agreement was unconscionable and a contract of adhesion. *Id.* at 92, 99 Cal.Rptr.2d 745, 6 P.3d 669.

The *Armendariz* court began its inquiry by analyzing *Duffield.* The court specifically rejected *Duffield* stating that it found the reasoning "unpersuasive." *Id.* at 93, 99 Cal.Rptr.2d 745, 6 P.3d 669. The court did not agree with the *Duffield* court's conclusion that Congress, in enacting Section 118 of the Civil Rights Act of 1991, intended to ban mandatory arbitration agreements. The court reasoned that if indeed this was Congress' intent, Congress would have simply stated it was banning mandatory arbitration of discrimination claims somewhere in the 1991 Act.[13] *Id.* at 93–94, 99 Cal.Rptr.2d 745, 6 P.3d 669.

After making this determination, the court then looked to the validity of the arbitration agreement. Under California law, "arbitration agreements are valid, enforceable, and irrevocable, save upon such grounds as exists at law or in equity for the revocation of any contract." *Id.* at 98, 99 Cal.Rptr.2d 745, 6 P.3d 669. The court proceeded to consider the following issue: "based on contract principles, are there any reasons for refusing to enforce the arbitration agreement," and specifically addressed plaintiff's arguments that the contract was contrary to public policy and unconscionable. *Id.* at 99, 99 Cal.Rptr.2d 745, 6 P.3d 669.

In determining that the agreement was not contrary to public policy, the court stated that mandatory arbitration agreements were indeed against public policy if through arbitration the claimant forfeits certain substantive statutory rights. *Id.* at 99–100, 99 Cal.Rptr.2d 745, 6 P.3d 669. However, the court stated that there was no reason to believe that mandatory arbitration deprived claimants of the full opportunity to pursue their claims so long as the process provided claimants a few procedural guarantees: availability of statutory remedies, no unreasonable costs or arbitration fees, and written arbitration decisions subject to judicial review. *Id.* at 100–103, 99 Cal.Rptr.2d 745, 6 P.3d 669.

In determining that the contract was unconscionable and was a contract of adhesion, the court concluded that the contract lacked mutuality and was one-sided. For example, the arbitration provision subjected only the employee's, but not the employer's, claims to arbitration. *Id.* at 120, 99 Cal.Rptr.2d 745, 6 P.3d 669. The court stated that "if the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maxim-

---

**13.** The California Supreme Court is not alone in making this determination. Several circuit courts have likewise rejected *Duffield.* See *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175 (3d Cir.1998), cert. denied, 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir.), cert. denied, 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999); *Desiderio v. National Ass'n of Securities Dealers, Inc.*, 191 F.3d 198 (2d Cir.1999), pet. for cert. filed, 68 USLW 3497 (Jan. 31, 2000); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir.1999).

izing employer advantage." *Id.* at 118, 99 Cal.Rptr.2d 745, 6 P.3d 669.

### B. An Employer's Requirement That Employees Agree to Mandatory Arbitration of Employment Claims Is Unlawful Under *Duffield*

The Ninth Circuit's holding in *Duffield* was unequivocal. *Duffield* held that an employer's actions in requiring an employee to sign a pre-dispute mandatory arbitration agreement is unlawful under Title VII. It is undisputed that LFHS continues to require its employees to agree to arbitration as a condition of employment despite the holding of *Duffield.*

LFHS criticizes *Duffield* as being wrongfully decided and notes that *Duffield* will eventually be overturned by the Ninth Circuit sitting *en banc,* or by the United States Supreme Court. The Court acknowledges that a great weight of legal authority supports LFHS's argument. *See, e.g., Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175 (3d Cir.1998), *cert. denied,* 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361 (7th Cir.), *cert. denied,* 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999); *Desiderio v. National Ass'n of Securities Dealers, Inc.,* 191 F.3d 198 (2d Cir.1999), *pet. for cert. filed,* 68 USLW 3497 (Jan. 31, 2000); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1 (1st Cir.1999). Nevertheless, unless and until that day comes, *Duffield* is the law of the Ninth Circuit, and the employment practice of LFHS that is at issue in this action clearly violates that law.

### C. Injunction

As previously discussed, the EEOC has the power to seek an injunction on behalf of the public. Under *Duffield,* this Court is required to issue an injunction prohibiting LFHS from requiring its employees to agree to arbitration of their Title VII claims as a condition of employment and from attempting to enforce any such previously executed agreements.

Accordingly, Defendant LFHS is hereby permanently enjoined from:

1) requiring or requesting its employees to agree to arbitration of their Title VII claims as a condition of employment; and

2) attempting to enforce any such previously executed agreements to arbitrate Title VII claims.

Failure to abide by the terms of this injunction will subject Defendant to contempt sanctions.

### V. Conclusion

Defendant LFHS's Motion for Summary Judgment is granted in part and denied in part; Defendant's alternative Motion for Partial Summary Judgment is denied as moot. Plaintiff EEOC's Motion for Partial Summary Judgment is granted in part and denied in part.

Summary judgment in favor of Defendant is hereby granted to the extent the claims asserted in the Complaint seek monetary relief.