**BORG–WARNER PROTECTIVE SERVICES CORPORATION, Appellant,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellee.**

No. 00–5094.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 26, 2001.

Decided April 17, 2001.

Priscilla L. Hapner argued the cause for appellant. With her on the briefs were John M. Stephen and Thomas P. Steindler.

Robert J. Gregory, Attorney, Equal Employment Opportunity Commission, argued the cause for appellee. On the brief were Philip B. Sklover, Associate General Counsel, and Geoffery L. J. Carter, Attorney.

Before: WILLIAMS, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Concurring opinion filed by Circuit Judge STEPHEN F. WILLIAMS, with whom Circuit Judge TATEL joins.

RANDOLPH, Circuit Judge:

Since 1991, Borg–Warner Protective Services Corporation has required its employees to sign, as a condition of employment, some form of an arbitration agreement or, as the company calls it, a "Pre-Dispute Resolution Agreement." A typical version of the agreement provides that if the employee brings suit on an employment-related claim, Borg–Warner may insist on arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, before a single arbitrator of "all matters directly or indirectly related" to the individual's recruitment, employment and termination, including "claims involving laws against discrimination . . . ." The Equal Employment Opportunity Commission considers such agreements unenforceable in regard to claims arising under Title VII of the Civil Rights Act of 1964, and has spelled out its position in a "Policy Statement on Mandatory Binding Arbitration of Employment Disputes as a Condition of Employment" (July 10, 1997) ("Policy Statement").

Borg–Warner brought this action against the EEOC in the district court seeking a declaratory judgment that its arbitration agreements were enforceable and that it had not violated Title VII by insisting that its employees sign such agreements as a condition of their employment. The company also sought an in-

junction, nationwide in scope, forbidding "the EEOC from issuing determinations to the contrary or attacking the facial validity of arbitration agreement[s] through litigation." According to the complaint, the events precipitating this action were as follows. On December 10, 1998, Rudy Lee, a former Borg–Warner employee, filed a charge with the EEOC's Seattle, Washington, office alleging that Borg–Warner had discriminated against him on the basis of his race. After an investigation, the EEOC found insufficient evidence to support the charge. Although Lee had not complained about the arbitration agreement, the EEOC District Director issued a "determination," a finding that there was "reasonable cause" to believe a Title VII violation had occurred when Borg–Warner required Lee to sign the arbitration agreement as a condition of employment. The EEOC invited the company and Lee to engage in conciliation to "eliminate the alleged unlawful practices." In a letter addressed to Borg–Warner, the EEOC asked the company to agree to cease using such agreements, and to provide notice to all employees that it had rescinded its policy favoring mandatory arbitration. Borg–Warner refused and filed this action a few days later.

On the EEOC's motion to dismiss for lack of subject matter jurisdiction, the district court held that the complaint did not arise under Title VII and so jurisdiction could not rest on 28 U.S.C. § 1331, 28 U.S.C. § 1337 or 28 U.S.C. § 1343. *Borg–Warner Protective Services Corp. v. EEOC*, 81 F.Supp.2d 20, 24–25 (D.D.C. 2000). The court found nothing in Title VII to give an employer a cause of action against the EEOC. *Id.* Borg–Warner could not invoke the Administrative Procedure Act, the court held, because neither the EEOC's Policy Statement nor its determination in the Lee case constituted "final" agency action. *Id.* at 26–28. The determination was merely tentative and interlocutory. The Policy Statement did not finally fix any obligation on the part of Borg–Warner. As to the company's request for a declaratory judgment, the court held that although it had subject matter jurisdiction, Borg–Warner lacked standing because the company has not alleged injury that could "be redressed by a favorable decision." *Id.* at 29.

I.

We have no doubt the district court had subject matter jurisdiction over Borg–Warner's complaint under 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This means, as Professor Mishkin put it in his classic article, that "the plaintiff must be contending that a federally ordained rule specifically creates his cause of action." Paul J. Mishkin, *The Federal Question in the District Courts*, 53 COLUM. L.REV. 157, 164 (1953). "Any national source," he added, "will suffice . . . ." *Id.* Or as Justice Holmes wrote in *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916), a "suit arises under the law that creates the cause of action." These formulations scarcely exhaust the definitions of federal question jurisdiction, *see Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8–9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), but they are surely at the heart of the matter.

■ Borg–Warner's complaint "arises under" federal law in the following respects. The company alleges a cause of action based on the Administrative Procedure Act: it contends that the APA entitles it to judicial review of the EEOC's Policy Statement and the EEOC's deter-

mination that Lee had a right to sue for a violation of Title VII. Both the APA and Title VII are federal laws, and so the claims satisfy the "arising under" requirement. It is of no moment whether Borg–Warner's claims · are meritless or would eventually fail. A claim does not have to be a good one for the court to have subject matter jurisdiction over it. *See, e.g., Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Borg–Warner's request for a declaratory judgment also arises under federal law. "Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant [here the EEOC] brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd.,* 463 U.S. at 19, 103 S.Ct. 2841.

## II.

Subject matter jurisdiction is one thing. Ripeness, standing, justiciability and the like, all of which the district court invoked in dismissing the complaint, are quite another. To put matters into perspective, we need to take stock of the state of the law regarding arbitration agreements and Title VII.

The EEOC has been waging a losing battle in its efforts to convince the courts that agreements like Borg–Warner's cannot be enforced to require employees to arbitrate Title VII claims. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), held that an employer could compel an employee to arbitrate his claim that the employer had violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* The Supreme Court considered and rejected Gilmer's contention that compulsory arbitration of an ADEA claim is inconsistent with that statute. However, because Gilmer's arbitration agreement

was contained in his application to the New York Stock Exchange to become a registered securities representative, the Court reserved the question whether a compulsory arbitration clause found in an employment contract would be enforceable. 500 U.S. at 25 n. 2, 111 S.Ct. 1647. Shortly after *Gilmer,* Congress passed the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, § 118 of which stated that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under" Title VII. 105 Stat. 1081 (*reprinted in* notes to 42 U.S.C. § 1981).

In *Cole v. Burns International Security Services,* 105 F.3d 1465 (D.C.Cir.1997), we relied on *Gilmer* to affirm a district court order dismissing an employee's Title VII action and compelling the employee to arbitrate with his employer pursuant to a compulsory arbitration agreement. Burns International Security Services, the prevailing party in *Cole,* is the parent corporation of Borg–Warner and Borg–Warner's arbitration agreements are about the same as the one we held enforceable in *Cole.*

Therefore, if the district court were to grant the relief Borg–Warner seeks in this case the company would gain nothing in the District of Columbia. Our decision in *Cole* already rejected the EEOC's position. A declaratory judgment saying as much would be redundant. An injunction against the EEOC (assuming one were proper) is entirely unnecessary. As far as this jurisdiction is concerned, Borg–Warner is therefore suffering no injury for which it is entitled to redress. Nor is Borg–Warner suffering any conceivable injury in the First Circuit, the Second Circuit, the Third Circuit, the Fourth Circuit, the Fifth Circuit, the Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the

Tenth Circuit, or the Eleventh Circuit, all of which have also rejected the EEOC's position. *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 163 F.3d 53 (1st Cir.1998); *Desidero v. National Ass'n of Securities Dealers, Inc.,* 191 F.3d 198 (2d Cir.1999); *Seus v. John Nuveen & Co.,* 146 F.3d 175, 182 (3d Cir.1998); *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996); *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229 (5th Cir.1991); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991); *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361 (7th Cir.1999); *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832 (8th Cir. 1997); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482 (10th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir.1992). Each of those courts of appeals agrees with us that Title VII claims may be subject to mandatory arbitration.[1]

The Supreme Court's decision in *Circuit City Stores, Inc. v. Adams,* —— U.S. ——, 121 S.Ct. 1302, —— L.Ed.2d —— (2001), adds to the weight of these precedents. The Court held that § 1 of the Federal Arbitration Act, 9 U.S.C. § 1, did not exempt contracts of employment except those involving transportation workers, a position we had reached in *Cole,* which the Court cited. *Id.* at 1306. As to statutory claims, the Court reiterated "that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law...." *Id.* at 1313. Not only does that broad statement encompass Title VII and all other federal

laws forbidding discrimination, but also the arbitration agreement in *Circuit City Stores* expressly stated that Title VII disputes were subject to mandatory arbitration.

The Ninth Circuit is the only court of appeals to hold that Title VII disputes cannot be made subject to compulsory arbitration agreements. *See Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182 (9th Cir.1998). We cannot say whether the Ninth Circuit will continue to adhere to *Duffield* in the face of the Supreme Court's *Circuit City* decision (which overruled another Ninth Circuit case). We do know that although the EEOC maintained in its "determination" in the Lee case that requiring employees to sign an agreement to arbitrate future Title VII claims was itself a violation of Title VII, *Duffield* does not so hold. *Duffield* ruled only that such agreements are "unenforceable" with respect to Title VII claims. 144 F.3d at 1199.

## A.

■ Borg–Warner's first claim, set out as Count I of its complaint, alleges that the EEOC's determination letter to Lee—stating that there was reasonable cause to believe that Borg–Warner was violating Title VII in requiring employees to sign the arbitration agreement—exceeded its authority under Title VII. (The EEOC's Policy Statement does not take the position that requiring employees to sign the agreement is itself a violation of Title VII; as in *Duffield,* it states only that such agreements are unenforceable with respect

---

1. Even if any one of these court of appeals had not ruled on this question, the Policy Statement still would have no effect on Borg-Warner in that particular jurisdiction. The existence (or nonexistence) of the Policy Statement does not affect the EEOC's ability

to file an *amicus* brief arguing the same position. In fact, if we credit the EEOC's representation about how it litigates this issue, its *amicus* briefs hardly even mention the Policy Statement.

to Title VII claims. Policy Statement at 3101, 3106.) This portion of Borg–Warner's complaint fails, the district court ruled, because the determination is merely interlocutory and not final. *Borg–Warner*, 81 F.Supp.2d at 26.

The court relied upon *Georator Corp. v. EEOC,* 592 F.2d 765, 767 (4th Cir.1979), which held that an EEOC determination of reasonable cause is not "final agency action" because "standing alone, it is lifeless and can fix no obligation nor impose any liability on the plaintiff." A Supreme Court opinion, which the parties failed to mention, adds further support to the court's ruling. *Federal Trade Commission v. Standard Oil,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), held that the FTC's determination that there was reasonable cause to believe the company was violating the pertinent statute and its later issuance of an administrative complaint did not constitute final agency action within the meaning of § 704 of the APA. "It represents a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." *Id.* at 241, 101 S.Ct. 488. If the FTC's complaint in *Standard Oil* "had no legal force or practical effect upon [the company's] daily business other than the disruptions that accompany any major litigation," *id.* at 243, 101 S.Ct. 488, the EEOC's determination in the matter of Lee had even less effect. At least the complaint in *Standard Oil* served "to initiate the proceedings," *id.* at 242, 101 S.Ct. 488. The EEOC's determination is even further removed: rather than initiating proceedings, it merely informed Lee that he had a right to bring a complaint. While there may be other reasons for rejecting this portion of Borg–Warner's complaint, it is perfectly clear that the EEOC's determination is not final agency action. That is enough to sustain the district court's judgment.

### B.

As to Borg–Warner's alleged cause of action under the APA to review the EEOC's Policy Statement, we will assume that the Policy Statement is a "rule" within the meaning of 5 U.S.C. § 551(13) and we will also assume that it represents the EEOC's "final" position regarding arbitration of Title VII claims—that, in other words, it constitutes "final agency action." 5 U.S.C. § 704; *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Even so, Borg–Warner still must establish that it is "aggrieved" by the EEOC's policy position. *See* 5 U.S.C. § 702.

The EEOC's Policy Statement carries no special weight in the courts: if it has any force, it is derived from the power of the EEOC's reasoning to persuade. *Christensen v. Harris Co.,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). The EEOC tells us that in its *amicus* briefs it therefore pays scant attention to its Policy Statement; its efforts are devoted to mounting arguments that, it hopes, will convince. What injury then is the Policy Statement inflicting on Borg–Warner? As we have written, in the District of Columbia and in the geographic areas covered by all the circuits except the Ninth, the answer is none.

Borg–Warner seems to recognize as much, which is why it wants us to concentrate our attention on the state of affairs in the Ninth Circuit. But even in the Ninth Circuit, Borg–Warner's problem is not with the EEOC's Policy Statement. It is with *Duffield.* The only plausible harm to the company consists in its inability to enforce its arbitration agreements with its employees who are working within the geographical limits of the Ninth Circuit.

But that harm is not being caused by the EEOC's Policy Statement. It results directly from the *Duffield* decision.

Borg–Warner claims that as "a result of the Policy ..., [Borg–Warner] can be subjected to stiffer legal and monetary penalties in future litigation challenging the Agreement since both the Policy and Determination may be admissible to show that [its] use of the Agreement is unlawful and utilized with reckless indifference to the law." We think this is much too speculative. The Policy Statement does not declare—as did the EEOC's determination in the Lee case—that having employees sign such agreements itself violates Title VII. The Policy Statement instead concludes that agreements compelling arbitration of Title VII claims are "inconsistent" with or "contrary to" Title VII. *See* Policy Statement ("agreements that mandate binding arbitration of discrimination claims as a condition of employment are contrary to the fundamental principles evinced in these laws") ("the Commission believes that such agreements are inconsistent with the civil rights laws") ("the Commission will continue to challenge the legality of specific agreements"). At oral argument, the EEOC's attorney said that the Commission carefully worded its Policy Statement so that it did not maintain that an employer violates Title VII by conditioning employment on the employee's signing of an agreement to arbitrate. All the Policy Statement was intended to convey, he added, was the EEOC's view that such agreements are unenforceable.[2] Even if the Policy Statement treated arbitration agreements as "illegal" that would not support Borg–Warner's argument. To say that an agreement is illegal is not to say that employers who require employees to sign the agreements as a condition of employment are guilty of violating Title VII. Calling an unenforceable agreement "illegal" is "misleading insofar as it suggests that some penalty is necessarily imposed on one of the parties, apart from the court's refusal to enforce the agreement. In some cases, the conduct that renders the agreement unenforceable is a crime, but this is not necessarily or even usually so." E. ALLAN FARNSWORTH, CONTRACTS § 5.1 (2d ed.1990).

Even *Duffield* does not say that companies requiring employees to sign arbitration agreements are guilty of violating Title VII. Although the *Duffield* court refused, with respect to Title VII claims, to enforce a general arbitration agreement, the court enforced the same agreement in regard to state law claims. *See* 144 F.3d at 1203. In the face of that ruling, we cannot see how an employer exposes itself to punitive damages by having employees sign such an agree-

---

2. We credit counsel's statement of how the EEOC views its Policy Statement. After oral argument, the EEOC supplied us with some of its filings in *EEOC v. Luce, Forward, Hamilton & Scripps, LLP*, 122 F.Supp.2d 1080 (C.D.Cal.2000), a case now on appeal to the Ninth Circuit. Invoking *res judicata*, the district court there rejected the EEOC's argument for punitive damages. Two items are of note. First, in support of the claim for punitive damages the EEOC cited its Policy Statement, stating that it put employers "on notice regarding the EEOC's position concerning most discrimination issues." Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at 15. This statement does not contradict the representation made by the EEOC's counsel at oral argument in this case. The question we have been considering is what position the EEOC did express in the Policy Statement. Second, the district court enjoined the employer in *Luce* from requiring prospective employees to sign mandatory arbitration agreements regarding Title VII claims. In doing so the court did not cite the Policy Statement. It cited only *Duffield*. 122 F.Supp.2d at 1093. Whether the court correctly interpreted the Ninth Circuit's opinion remains to be seen.

ment. Furthermore, the notion that Borg–Warner could be held liable in punitive damages for insisting upon an arbitration agreement in the face of the Supreme Court's *Circuit City* opinion and the decisions of eleven courts of appeals upholding such agreements is, we think, far-fetched. (The California Supreme Court, observing that the Ninth Circuit was in "minority of one," also rejected *Duffield* and indicated that Title VII claims may be subject to mandatory arbitration agreements. *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 677 (2000).)

The short of the matter is that Borg–Warner is not aggrieved by the existence of the EEOC's Policy Statement. It is not suffering any legally cognizable injury from the Policy Statement, and for that reason the district court properly dismissed its complaint. Given this disposition, we do not address any questions of comity between this circuit and the Ninth, or the propriety of a federal court in the District of Columbia enjoining the EEOC from adhering to a litigating position in the Ninth Circuit that the court of appeals for that circuit has sustained.

*Affirmed.*

STEPHEN F. WILLIAMS, Circuit Judge, with whom Circuit Judge TATEL joins, concurring:

Because the EEOC's use of its Policy Statement appears more complicated than stated above, I write separately.

The Policy Statement may not explicitly state that employment contracts requiring arbitration of discrimination claims violate Title VII, but the EEOC apparently believes that it could honestly be read to that effect. The EEOC has cited it in at least one brief in support of precisely that argument. In October 2000 the EEOC submitted a brief in the Central District of California that expressly asks the court for punitive damages because the defendant allegedly "unlawfully retaliated against Mr. Lagatree [an applicant for employment] by denying him employment … based on his refusal to sign an employment agreement compelling mandatory arbitration of future claims of employment discrimination …, in violation of Title VII." *EEOC v. Luce, Forward, Hamilton & Scripps, LLP*, No. 00–1322 at 2 (C.D. Cal. Oct. 23, 2000) (plaintiff's opposition to defendant's motion for summary judgment) (submitted under Circuit Rule 28(j)). In the section specifically addressing punitive damages, the brief states:

> [I]t is also important to note that the EEOC had published a Policy Statement on July 10, 1997, two months before Luce terminated Mr. Lagatree, on "Mandatory Arbitration of Employment Disputes as a Condition of Employment", which concluded that these unilateral agreements harms [sic] both the individual civil rights claimant and the public interest in eradicating discrimination. These policy statements put employers on notice regarding the EEOC's position concerning most discrimination issues.

*Id.* at 15. Although the EEOC did not explicitly say in its brief that the Policy Statement concludes that these agreements violate Title VII, its citation to the Policy Statement—in an argument supporting the imposition of punitive damages on an employer who insisted on such agreements—must mean that the EEOC briefwriter believed that competent judges could be persuaded to believe that it reached that conclusion.[1]

---

1. Although the district court rejected EEOC's argument for punitive damages because of *res*

As the preceding opinion notes, however, EEOC counsel before us took a quite different position—one that we believe is better supported by the Policy Statement's language. He declared, "This agreement [referring to the Policy Statement] does not purport to do that [make an assertion of illegality], and I hope it doesn't do that." Tr. at 31. Indeed, he said that the Policy Statement "was vetted very carefully to make sure that it didn't say it [an employer's insistence on an arbitration agreement] was illegal under Title VII." *Id.* at 28.

Because the formulation of the Commission's position before a court of appeals is a more material commitment than the filing of a district court brief, and counsel certainly did not file a corrective letter despite the panel's prolonged interrogation on the issue, it seems reasonable to take the EEOC's position before us as its true position, a proposition helpful, though not necessarily essential, to the ultimate judgment here.

*judicata,* the court declined to interpret *Duffield* as holding "only that mandatory arbitration agreements are unenforceable" and held that injunctive relief was appropriate because requiring employees to enter into mandatory

arbitration agreements is "unlawful under Title VII." *EEOC v. Luce, Forward, Hamilton & Scripps, LLP,* 122 F.Supp.2d 1080, 1091, 1093 (C.D.Cal.2000).