**COUNCIL OF PRISON LOCALS,**
Appellant

v.

**Roy BREWER, et al.**

No. 83–1639.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 29, 1984.

Decided June 1, 1984.

Peter B. Broida, Washington, D.C., for appellant.

William E. Persina, Atty., Federal Labor Relations Authority, Washington, D.C., with whom Ruth E. Peters, Sol., and Steven H. Svartz, Deputy Sol., Washington, D.C., were on the brief for appellees, Brewer and Mahone.

Stanley S. Harris, U.S. Atty., Washington, D.C. (at the time the brief was filed), Royce C. Lamberth, R. Craig Lawrence, Rebecca L. Ross and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee, Director of the Bureau of Prisons.

Before WALD and MIKVA, Circuit Judges, and DAVIS,* Circuit Judge for the United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This appeal presents the question of whether the orders of the Federal Service Impasses Panel (Impasses Panel or Panel) are generally subject to direct judicial review. Upon examining the relevant statutory provisions and legislative history, we conclude that Congress intended to vest in the Panel broad and final authority to put an end to disputes in which negotiations have failed to produce a settlement. Accordingly, while we are cognizant of the heavy presumption in favor of judicial review of agency action, we nevertheless hold that Congress precluded direct judicial review of Panel orders, except in extraordinary circumstances not present in this case. We note, however, that Panel orders are reviewable indirectly in the context of unfair labor practice proceedings.

## I. BACKGROUND

In October 1979, the Council of Prison Locals (Council), a union representing employees of the United States Bureau of Prisons (Bureau), began to negotiate a labor contract in anticipation of the expiration of its existing contract. After several days of negotiation and several weeks of mediation, the parties remained at loggerheads over numerous articles in the proposed agreement. Accordingly, the Council requested that the Impasses Panel resolve the remaining disputes.

The Impasses Panel then appointed a hearing officer, who presided at factfinding hearings and issued a report to the Panel summarizing the parties' positions on the eight issues in dispute. See Factfinder's Report, No. 79 FSIP 120 (Oct. 29, 1980), *reprinted in* Joint Appendix (J.A.) at 19–66. Three weeks later, the Impasses Panel directed the parties to resolve these disputes by including specified language in the agreement. See Decision and Order, No. 79 FSIP 120 (Nov. 19, 1980), *reprinted in* J.A. at 67–75. In most respects, the Panel's order favored the Bureau's proposals over the Council's. While the Panel declared that it had "considered the entire record," and that "in the circumstances of this case [ ] the impasse should be resolved in accordance with the Order set forth," it articulated no reasons for the particular contract language imposed upon the parties.

The Council then sought judicial review of the Panel's order in this court. See *Bureau of Prisons Council v. Federal Labor Relations Authority*, No. 81–1055 (Jan. 19, 1981) (petition for review). In July 1981, however, this court granted the Federal Labor Relations Authority's motion to dismiss the appeal for lack of subject matter jurisdiction. See *id.* (July 2, 1981) (order granting motion to dismiss) (per curiam).

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

Thereafter, the Council initiated the present action in the district court. The complaint alleged that federal question jurisdiction existed over the case, in addition to jurisdiction created by the Administrative Procedure Act, 5 U.S.C. §§ 702–704, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, *id.* § 2201. *See* Complaint ¶ 1, *reprinted in* J.A. at 4. The district court, after examining the language, purpose and legislative history of the Federal Services Labor-Management Relations Statute (Act or Statute), concluded that it had no jurisdiction to entertain the Council's claims. *See Council of Prison Locals v. Howlett*, 562 F.Supp. 849 (D.D.C.1983). Because we find a clearly discernible congressional intent to foreclose direct review of Impasses Panel orders, we affirm.

## II. DISCUSSION

■■■ At the outset, we recognize that access to judicial review of agency actions should be restricted only upon a clear and convincing showing that Congress intended to prohibit such judicial oversight. *See, e.g., Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 379 (1975); *Local 1219, American Federation of Government Employees v. Donovan*, 683 F.2d 511, 517 (D.C.Cir.1982). Our examination of the relevant indicia of congressional intent, set forth below, convinces us that Congress meant to foreclose direct judicial review of Impasses Panel orders. We therefore affirm the district court's dismissal of this action.

The statute establishes the Impasses Panel as "an entity within" the Federal Labor Relations Authority (FLRA or Authority), 5 U.S.C. § 7119(c)(1), and authorizes it to investigate "promptly" any negotiation impasse and to "take whatever action is necessary and not inconsistent with this chapter to resolve the impasse," *id.* § 7119(c)(5)(A), (B)(iii). The statute thus commits to the panel·broad authority to make swift decisions in order to end disputes in which the negotiation process between a federal agency and its employees has failed.[1]

In addition, the statute makes the Panel's orders "binding on [the] parties during the term of the agreement, unless the parties agree otherwise." *Id.* § 7119(c)(5)(C). While section 7123 specifically provides for judicial review of orders by the *Authority,* there is no provision for such review of *Panel* orders, and Panel orders are not appealable even to the Authority. *See id.* § 7105. Accordingly, the statute gives every reasonable indication that orders by the Impasses Panel are final and nonreviewable.

The legislative history of the Civil Service Reform Act of 1978, which gave statutory recognition to the Impasses Panel,[2] confirms this understanding. First, the Administration's proposed bill provided for no review of Panel orders; in fact, section 305 of the proposed bill would have rendered "[t]he decisions of the Authority on any matter within its jurisdiction … final and not subject to judicial review." H.R. Doc. No. 341, 95th Cong., 2d Sess. 7 (1978) (message from the President transmitting

---

1. Unlike the situation in *Local 1219, American Federation of Government Employees,* in this case the Panel has not restricted its discretion through the adoption of regulations. *Compare Local 1219,* 683 F.2d at 515–16 (describing regulatory scheme that "does not contemplate that the Director shall have complete discretion") *with* 5 C.F.R. § 2471.11 (reiterating statutory language; Panel "may take whatever action is necessary and not inconsistent with 5 U.S.C. chapter 71 to resolve the impasse"). Furthermore, in *Local 1219,* we noted that "permissive language would [not] offer conclusive evidence of congressional intent to preclude review." 683 F.2d at 516 n. 16. In this case, however, there is a great deal more evidence—in the

statutory language and in the legislative history—that Congress intended to restrict judicial review. *See infra.*

2. The Impasses Panel was first established by Executive Order as an agency within the Federal Labor Relations Council. *See* Exec. Order 11491 §§ 5, 17 (Oct. 29, 1969) (the Panel "in its discretion … may settle the impasse by appropriate action"). No judicial review was provided for in the Executive Order program. *See* Federal Personnel Management Project, *Option Paper Number Four* ¶ I(c)(2), *reprinted in Legislative History* at 1362.

Proposal to Reform the Federal Personnel Management System), *reprinted in* Subcommittee on Postal Personnel and Modernization of the House Committee on Post Office and Civil Service, 96th Cong., 1st Sess., *Legislative History of the Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978* 637 (1979) [hereinafter *Legislative History*]. The Senate bill made all Panel orders appealable to the Authority, but restricted judicial review of Authority decisions to include appeals only from unfair labor practice proceedings, except when constitutional questions were raised. *See Legislative History* at 567, 584–85, 604–05 (sections 7204(c)(4), 7216(f) and 7235(h) of S. 2640); H.R.Rep. No. 1717, 95th Cong., 2d Sess. 153 (1978) (Conference Report), *reprinted in Legislative History* at 821, U.S.Code Cong. & Admin.News 1978, p. 2723. Thus, the Administration's proposed bill and the Senate bill both envisioned that Panel orders would generally not be subject to direct judicial review.

For the purposes of our review today, the House bill is of primary importance, because its provision regarding the Impasses Panel was incorporated *verbatim* into the final Act.[3] *Compare* 124 Cong.Rec. H9698 (daily ed. Sept. 13, 1978), *reprinted in Legislative History* at 977–78 (section 7119 of H.R. 11280) *with* 5 U.S.C. § 7119. As the House Committee Report that accompanied the bill explained:

> Notice of any final action of the Panel must be promptly served upon the parties, and the action is final and binding upon the parties during the term of the agreement, unless the parties agree otherwise. *Final action of the Panel under this section is not subject to appeal,* and failure to comply with any final action ordered by the Panel constitutes an unfair labor practice . . . .

**3.** Through an oversight, the final Act provides additionally that "the Panel shall consider the Impasse and *and* shall . . . ." 5 U.S.C. § 7119(c)(5)(A) (emphasis supplied).

**4.** In addition, the Conference Report restricts its discussion of judicial review to the "decisions of the Authority" and "matters that are appealable

H.R.Rep. No. 1403, 95th Cong., 2d Sess. 54 (1978), *reprinted in Legislative History* at 700 (emphasis supplied). A clearer suggestion that Congress intended no appeal from Panel decisions would be difficult to imagine.[4] We therefore find that Congress has restricted the courts from subjecting Panel actions to direct judicial scrutiny.

 However, our conclusion today does not mean that absolutely *no* judicial review of Panel orders is available. As the House report, *supra*, noted, "failure to comply with any final action ordered by the Panel constitutes an unfair labor practice." *See also* 5 U.S.C. § 7116(a)(6), (b)(6) (it is an unfair labor practice for an agency or a labor organization "to fail or refuse to cooperate in impasse procedures and impasse decisions"). Once the Authority issues findings of fact and an order in an unfair labor practice proceeding, *see* 5 U.S.C. § 7118(a)(7), the parties may seek review in the courts of appeals, *see id.* § 7123(a). In such an appeal, the courts may review the validity of the Panel order in question. *See, e.g., American Federation of Government Employees v. FLRA,* 712 F.2d 640, 641 n. 4 (D.C.Cir.1983) ("Panel decisions are reviewable, first by the Authority, then in court in an unfair labor practice proceeding."); *Department of Treasury v. FLRA,* 707 F.2d 574, 577 n. 7 (D.C.Cir.1983) (same). In light of our examination of the statute and its legislative history, we agree with the district court that this specific review procedure, established by the statute, forecloses the assumption of general federal question or mandamus jurisdiction. 562 F.Supp. at 851.

 Of course, in exceptional circumstances, a district court may exercise federal jurisdiction to invalidate a Panel order made "in excess of its delegated powers

to the Authority." H.R.Rep. No. 1717, 95th Cong., 2d Sess. 153 (1978), *reprinted in Legislative History* at 821, U.S.Code Cong. & Admin. News 1978, p. 2887. Under the bill as reported by, the Conference Committee, just as in the final Act, Panel orders were not appealable to the Authority.

and contrary to a specific prohibition of the Act." *Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 184, 3 L.Ed.2d 210 (1958). The invocation of *Leedom* jurisdiction is extraordinary; to justify such jurisdiction, there must be a "specific provision of the Act which, although it is 'clear and mandatory,'" was nevertheless violated by the Panel. *Physicians National House Staff Association v. Fanning,* 642 F.2d 492, 496 (D.C.Cir.1980) (en banc) (quoting *Leedom,* 358 U.S. at 188, 79 S.Ct. at 183), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). In this case, the Council contends that the Panel's order exceeds its statutory authority because, according to the Council, the Panel "may not direct parties to agree to proposals or make concessions."[5] Complaint ¶ 16, *reprinted in* J.A. at 7. However, section 7119(c)(5)(B)(iii), which authorizes the Panel to "take whatever action is necessary and not inconsistent with this chapter to resolve the impasse," appears to contemplate imposed settlements. *See, e.g., American Federation of Government Employees v. FLRA,* 712 F.2d at 646 & n. 24; *American Federation of Government Employees v. FLRA,* 691 F.2d 565, 569 n. 26 (D.C.Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2085, 77 L.Ed.2d 297 (1983); *Department of Defense v. FLRA,* 659 F.2d 1140, 1146 (D.C.Cir.1981), *cert. denied sub nom. American Federation of Government Employees v. FLRA,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); *see also Nebraska Military Department v. FLRA,* 705 F.2d 945, 950 n. 7 (8th Cir.1983). Thus, the Panel's action does not clearly exceed its authority in the respect alleged by the Council.[6]

■ Additionally, the Council complains that "the [Panel's] decision is arbitrary and not in accordance with law, since it includes no explanation for the actions taken by the Panel." Complaint ¶ 16. However, nothing in the Act requires the Panel to articulate reasons or to make findings; instead, as we explained *supra* at 4–5, the statute contemplates swift, decisive action by the Panel to settle an impasse. While the Administrative Procedure Act enables a reviewing court to set aside agency action found to be "arbitrary and capricious," 5 U.S.C. § 706(2)(A), it does not apply when the relevant statutes "preclude review" or when the relevant agency action "is committed to discretion by law," *id.* § 701(a). In the present circumstances, the Panel order at issue in this case is outside the reach of APA standards.[7] In any event, the APA does not clearly oblige the Panel to give reasons for its actions, and such clarity of obligation is necessary for the exercise of *Leedom* jurisdiction.

Finally, we believe that our decision today is consistent with the public policies embodied in the statutory scheme of review. The Impasses Panel serves as a mechanism of last resort in the speedy resolution of disputes, after negotiations have failed. By providing no direct re-

---

**5.** To support its claim, the Council relies upon section 7103(a)(12) of title 5, which defines "collective bargaining." Under this provision, the obligation to engage in collective bargaining "does not compel either party to agree to a proposal or to make a concession." This definition of collective bargaining, however, does not settle the question of the scope of the Panel's authority.

**6.** *Leedom* jurisdiction might be justified by a showing that the Panel's action was clearly *not* "consistent with" chapter 71 of title 5. *See* 5 U.S.C. § 7119(c)(5)(B)(iii). For example, a Panel order might clearly impinge upon employees' rights established by 5 U.S.C. § 7102, or clearly disregard the rights and duties of agencies and recognized bargaining units established by 5 U.S.C. §§ 7106, 7111–7114. We find no such

clear departure from the requirements of chapter 71 in this case.

**7.** The APA does not afford "an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). Similarly, the Declaratory Judgment Act does not create an independent federal jurisdictional basis. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–879, 94 L.Ed. 1194 (1950); *Potomac Passengers Ass'n v. Chesapeake & Ohio Ry. Co.,* 520 F.2d 91, 97 (D.C.Cir.1975). We do not decide today whether federal jurisdiction might exist over a declaratory action filed in anticipation of an impending unfair labor practice proceeding.

course to the courts, the Congress evidently intended to supplement speed with finality.[8] The availability of protracted litigation would undermine these values of speed and finality evidenced in the statutory scheme. *See Devine v. White,* 697 F.2d 421, 435–36 (D.C.Cir.1983); *Physicians National House Staff Association v. Fanning,* 642 F.2d 492 (D.C.Cir.1980) (en banc), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). While on occasion such a scheme may result in uncorrected errors of judgment, it is Congress, and not this court, that has the authority to alter the scheme of review.[9]

### III. CONCLUSION

Accordingly, the judgment of the district court dismissing this case is

*Affirmed.*

---

**8.** As the Federal Personnel Management Project explained in 1977, "the Federal sector has few incentives to the parties to reach an agreement—in particular, there are not strike deadlines, with default costs, as exist in the private sector." *Legislative History* at 1402. In addition, "[w]ithout some form of finality, fact finding in difficult cases may be only a waste of time." *Id.* at 1403. Accordingly, the Project looked to the Impasses Panel to bring "finality to the negotiation process." *Id.* at 1400.

**9.** We recognize, however, the shortcomings of the unfair labor practices proceeding as the exclusive means for assuring judicial review of Panel orders. The decision to defy an existing labor contract—even if the relevant contract term were imposed by a Panel order—is not to be taken lightly. Such defiance could subject the union to prolonged administrative proceed-ings, followed perhaps by a cease and desist order, before judicial review could be available. *See* 5 U.S.C. § 7118. Furthermore, in many situations—for instance, where an employee *benefit* rather than a *burden* is at issue—it is difficult to see what the union could do to challenge the disputed contract term, since it may not resort to a "strike, work stoppage, or slowdown" under pain of *decertification. See id.* § 7120(f).

Presented with such a choice, it is most likely that a union would often go along with the contract, and relinquish the opportunity for judicial review, rather than risk such calamities. Perhaps Congress wished to pay this price in return for swift and final Panel authority. In any event, our decision today adheres to the language and legislative history of the Act. Of course, Congress remains free to alter the scheme of review as it sees fit.