# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 25, 2013      Decided December 17, 2013

No. 12-1383

UNITED STATES DEPARTMENT OF JUSTICE FEDERAL BUREAU
OF PRISONS FEDERAL CORRECTIONAL COMPLEX COLEMAN,
FLORIDA,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
COUNCIL OF PRISON LOCALS, COUNCIL 33, LOCAL 506,
INTERVENOR

———

Consolidated with 13-1067

———

On Petitions for Review and Cross-Applications for
Enforcement of an Order of the Federal Labor Relations
Authority

———

*Howard S. Scher*, Attorney, U.S. Department of
Justice, argued the cause for petitioner. With him on the
briefs were *Stuart F. Delery*, Assistant Attorney General, and
*Leonard Schaitman*, Attorney.

*Zachary R. Henige*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. On the brief were *Rosa M. Koppel*, Solicitor, and *Barbara A. Sheehy*, Attorney.

*David A. Borer* and *Judith D. Galat* were on the brief for intervenor American Federation of Government Employees, Council of Prison Locals, Council 33, Local 506 in support of respondent.

Before: BROWN, *Circuit Judge*, and EDWARDS and SILBERMAN, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

SILBERMAN, *Senior Circuit Judge*, concurring in part.

EDWARDS, *Senior Circuit Judge*: The Petitioner in this case, the United States Department of Justice Federal Bureau of Prisons Federal Correctional Complex Coleman, Florida ("agency" or "BOP"), challenges a decision and order of the Federal Labor Relations Authority ("FLRA" or "Authority") regarding United States Penitentiary I, a high security facility in Coleman, Florida. *Am. Fed'n of Gov't Emps. Council of Prison Locals 33 Local 506 (Union)*, 66 F.L.R.A. 819 (July 23, 2012) ("*FLRA Decision*"), *reprinted in* Joint Appendix ("J.A.") 284-309. The Authority held that BOP was required to bargain with the American Federation of Government Employees, Council of Prison Locals, Council 33, Local 506 ("Union") over two proposals relating to BOP's installation of two metal detectors in the compound through which prisoners must pass to enter or exit the recreation yard. *Id.* at 824, 828.

The Union's Proposal 1 would require prison management to have inmates turn in all watches which do not clear the compound metal detector, treat such watches as contraband, and assure that watches sold in the prison store would not set off the metal detectors. In support of this proposal, the Union argued, *inter alia*, that the bottlenecks of inmates at the entrance to the compound/detector area, caused by officers having to personally search inmates who had set off the metal detectors while other inmates waited, posed a safety risk to officers who could be "trapped in the event of a disturbance." *Id.* at 821. The FLRA determined that Proposal 1 was negotiable as an "appropriate arrangement" under 5 U.S.C. § 7106(b)(3) because it sought to ameliorate harm caused by the installation of the new metal detectors and did not excessively interfere with management's rights under § 7106(a)(1) to determine its internal security practices.

The Union's Proposal 2 initially consisted of the following three sentences:

> A block and mortar Compound Officer's station, or comparable building materials, will be constructed on the compound. This should be constructed near one of the metal detector areas. *The Metal Detector Station on the opposite side of the compound should have a secure area to be used as a control center for controlling inmate movement through the metal detector area, enclosed in a chain link fence, or something comparable.*

*Id.* at 824 (emphasis added). The Authority found that Proposal 2, in its entirety, would excessively interfere with management's right to determine internal security practices and, thus, is not an "appropriate arrangement" subject to bargaining. *Id.* at 827. However, the Authority granted the Union's request to sever the third sentence from Proposal 2

and held that the severed sentence is within the duty to bargain. *Id.* The Authority did not hold that the Union has a right to bargain over the construction of "chain link fence, or something comparable." Rather, it reasoned that the third sentence did not offend BOP's management rights because it merely proposed that the metal detector on one side of the compound "*should*" (instead of must) have a secure area enclosed in a chain link fence or something comparable. *Id.* at 828. In other words, the Authority found that the third sentence of Proposal 2 was negotiable because it required nothing of BOP. *Id.*; Br. for Resp't at 27.

In March 2013, after BOP had filed its petition for review with this court but before arguments had been presented to the court, the prison warden changed the metal detector policy so that detectors would be used only "as needed." BOP then filed a motion with the court to dismiss the case as moot because the bottleneck problem that prompted the Union's proposals was no longer an issue.

BOP now asks that this court find its petition moot and vacate the Authority's decision and order, or, in the alternative, that the court reverse the Authority's decision and order on the merits. The Authority has cross-petitioned for enforcement of its decision and order, and the Union has intervened on behalf of the Authority. For the reasons indicated below, we deny BOP's motion to dismiss, deny the petition for review with respect to Proposal 1, grant the petition with respect to the third sentence of Proposal 2, and remand the case to the Authority for further review.

## I. MOOTNESS

We first address the threshold jurisdictional issue raised by BOP, *i.e.*, whether "this case is moot because of events

occurring after the Authority's decision, namely, a new warden's decision to use the compound detectors to screen only those inmates suspected of carrying contraband." Br. for the Pet'r at 3. BOP is simply mistaken in its contention that the case is moot because the action giving rise to the Union's bargaining demands is no longer an issue. On this point, the Supreme Court has spoken unequivocally:

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot. A controversy may remain to be settled in such circumstances, *e.g.*, a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.

*United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (citations omitted); *accord County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). In order for this matter to be declared moot, BOP must satisfy a heavy burden of demonstrating "that 'there is no reasonable expectation' that the alleged violation will recur." *County of Los Angeles*, 440 U.S. at 631 (quoting *W.T. Grant*, 345 U.S. at 633); *accord Payne Enters., Inc. v. United States*, 837 F.2d 486, 492 (D.C. Cir. 1988). BOP has not satisfied this burden.

The record before the court indicates that BOP has not irrevocably reversed its decision to place metal detectors in the prison compound. And it is uncontested that BOP retains the discretion to decide how to utilize the metal detectors. In a February 2013 memorandum issued by the agency concerning use of the metal detectors, BOP declared that the metal detectors will not be removed from the recreation yard and that the metal detectors will be used "to screen inmates as

needed for security purposes (randomly, suspicious behavior, etc.)." Br. for the Pet'r, Addendum B. It is clear from this directive that the agency can increase the number of inmates required to pass through the metal detectors at any time, as it sees fit, and reintroduce the bottleneck problem that the Union seeks to address through its bargaining proposals. Given this reality, we cannot conclude that BOP has met its "heavy burden" of showing that "there is no reasonable expectation that the wrong will be repeated." *Payne Enters.*, 837 F.2d at 492 (citation omitted).

BOP also contends that we should vacate the FLRA's decision, either because the case is moot or because the Union's claim regarding Proposal 1 is now stale. We disagree. Even if the case were moot, we would not vacate the FLRA's order with respect to Proposal 1. The Supreme Court has stated that if the party seeking relief from the judgment below caused the mootness by voluntary action, vacatur usually will not be ordered. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25, 29 (1994). We can find no equitable basis for vacatur in this case. However, we will remand the case for further consideration by the Authority to allow it to determine whether, in light of the changed circumstances cited by BOP, the order to bargain over Proposal 1 should be modified.

## II. LEGAL FRAMEWORK

As we explained in *Nat'l Treasury Emps. Union v. FLRA (NTEU 2008)*, 550 F.3d 1148 (D.C. Cir. 2008):

The Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101-7135, requires federal agencies to bargain with public employee unions over employment conditions, but renders certain management rights

nonnegotiable, including an agency's right to determine its "internal security practices," 5 U.S.C. § 7106(a)(1). When a union submits a proposal that would affect an agency's internal security practices, the agency can invoke this provision to relieve it of the obligation to negotiate over the proposal. To find that a proposal would affect the agency's right to determine its internal security practices, the Federal Labor Relations Authority must determine that the agency's policy is reasonably linked to the security of its operations, and that the union's proposal deviates from or modifies the policy. *See Nat'l Treasury Emps. Union v. FLRA (NTEU I)*, 404 F.3d 454, 456-57 (D.C. Cir. 2005). An agency may nevertheless be required to negotiate over a proposal which would affect its right to determine its internal security practices if the union can establish that the proposal represents an "appropriate arrangement[ ] for employees adversely affected" by the agency's exercise of that right. § 7106(b)(3).

In assessing whether a proposal that would affect an agency's right to determine its internal security practices is nonetheless negotiable as an appropriate arrangement, the Authority applies the "*KANG* test." *See Nat'l Treasury Employees Union v. FLRA (NTEU II)*, 437 F.3d 1248, 1252-53 (D.C. Cir. 2006) (citing *Nat'l Ass'n of Gov't Employees, Local R14-87 (KANG)*, 21 F.L.R.A. 24 (1986)). Under this test, the Authority requires the union to establish that the proposal is in fact intended as an arrangement to benefit employees. If the union does so, then the Authority balances the "'practical needs of employees and managers'" to see if the proposal "'excessively interferes'" with management rights. *NTEU II*, 437 F.3d at 1253 (quoting *KANG*, 21 F.L.R.A. at 31-32).

Therefore, in order to conclude that an agency has no obligation to negotiate over a proposal, the Authority must determine, first, that the proposal would affect the agency's right to determine its internal security practices and, second, that the proposal does not qualify as an appropriate arrangement. While the Authority may make the first determination without requiring the agency to produce evidence if the connection is obvious, *see, e.g.*, *U.S. Dep't of Def. Fort Bragg Dependents Sch.*, 49 F.L.R.A. 333, 343 (1994), its second determination must be supported by record evidence, *e.g.*, *NTEU I*, 404 F.3d at 458.

*Id*. at 1150-51.

As noted above, the dispute in this case arose when BOP installed outdoor metal detectors at the United States Penitentiary I in Coleman, FL, and implemented a policy requiring that all prisoners move through them on the way in and out of the recreation yard. The Union, concerned that the large numbers of inmates moving through the detectors could cause "bottlenecking," submitted a number of bargaining proposals for changes in prison procedure intended to improve working conditions for the correctional officers in light of the new detectors. Only Proposal 1 and the third sentence of Proposal 2 are at issue in this case.

## III. STANDARD OF REVIEW

"It is well established that the court's role in reviewing the FLRA's negotiability determinations is narrow." *Am. Fed'n of Gov't Emps., Local 2761 v. FLRA*, 866 F.2d 1443, 1446 (D.C. Cir. 1989). We "will only reverse a negotiability finding of the Authority when the finding is not supported by

substantial evidence, is inconsistent with the governing statute, represents an unexplained departure from prior agency determinations, or is otherwise arbitrary or capricious or not in accordance with the law." *Id.*

However, pursuant to arbitrary and capricious review, if an agency's "explanation for its determination . . . lacks any coherence," a court owes "no deference to [the agency's] purported expertise." *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006); *accord Fox v. Clinton*, 684 F.3d 67, 80 (D.C. Cir. 2012) (holding that because the agency failed to offer any coherent explanation for its judgment denying the plaintiff's application for a Certificate of Loss of Nationality, the action was arbitrary and capricious for want of reasoned decisionmaking); *Coburn v. McHugh*, 679 F.3d 924, 926 (D.C. Cir. 2012) (holding that because the agency decisions were "largely incomprehensible," they were "unworthy of any deference").

## IV. PROPOSAL 1

We need not tarry long over Proposal 1, for the Authority's decision is eminently reasonable and supported by the record. The Authority found that the Union had identified several adverse effects resulting from BOP's decision to install new outdoor metal detectors. These adverse effects included, *inter alia*, bottlenecks at the metal detector entrances that compromised the safety of officers and the efficacy of the clearing process and that increased the amount of time officers were "at the mercy of . . . climate conditions." *FLRA Decision*, 66 F.L.R.A. at 823. Moreover, the Authority found that "Proposal 1 is sufficiently tailored because it targets a group of employees likely to be harmed by a particular exercise of management's right to determine

internal security practices, here, the installation of outdoor metal detectors. It is intended to reduce nuisance alarms triggered by prohibited watches, thereby moving inmates through the compound-detector bottlenecks more quickly." Br. for Resp't at 17; *see FLRA Decision*, 66 F.L.R.A. at 823. Finally, the Authority found that Proposal 1 is an "appropriate arrangement" under *KANG* because "banning prohibited watches would reduce the delays, inefficiencies, and security risks caused by nuisance alarms at the compound-detector bottlenecks." *FLRA Decision*, 66 F.L.R.A. at 823.

During argument before this court, counsel for BOP suggested that Proposal 1 should be declared non-negotiable because BOP retains sole discretion to determine all matters related to internal security at its prisons. This assertion is wrong as a matter of law. As noted above in *NTEU 2008*, "[i]n assessing whether a proposal that would affect an agency's right to determine its internal security practices is nonetheless negotiable as an appropriate arrangement, the Authority applies the '*KANG* test.'" 550 F.3d at 1150. The Authority appropriately applied the *KANG* test here and reasonably determined that Proposal 1 would not excessively interfere with management rights. BOP argued before the FLRA that Proposal 1 excessively interferes with its management rights because it would leave the agency without discretion to decide "what is and is not contraband as it relates to inmate watches." Agency's Statement of Position at 15, *reprinted in* J.A. 110. However, as the FLRA properly notes, BOP never explained to the Authority just how this purported loss of discretion would "excessively interfere" with BOP's management rights. *FLRA Decision*, 66 F.L.R.A. at 823.

In sum, we can find no grounds upon which to overturn the judgment of the Authority with respect to Proposal 1. The

Authority's decision clearly passes muster under the applicable standard of review.

## V. PROPOSAL 2

The Authority's decision on Proposal 2 is a different matter, however. It is arbitrary and capricious because it is "largely incomprehensible" and thus not supported by reasoned decisionmaking. *Coburn*, 679 F.3d at 926.

The Authority held that the Proposal 2 *taken as a whole* was non-negotiable because "a proposal concerning the construction of a shelter for officers on the grounds of a correctional facility affects management's right to determine internal security practices." *FLRA Decision*, 66 F.L.R.A. at 826. The Authority found that "management has made a decision to keep the compound area free from any obstructions that could aid an inmate in escaping, committing an assault, or otherwise engaging in illegal or non-allowed conduct in that area." *Id.* at 825. (citation and alterations omitted). Thus, the Authority concluded that Proposal 2 would impermissibly infringe management rights, and it further concluded that the proposal was not an appropriate arrangement because it "excessively interferes with the Agency's right to determine its internal security practices." *Id.* at 826.

Oddly, however, the Authority concluded that the third sentence in Proposal 2 –

> *The Metal Detector Station on the opposite side of the compound should have a secure area to be used as a control center for controlling inmate movement through the metal detector area, enclosed in a chain link fence, or something comparable.*

– is negotiable because it "has a separate meaning, and can operate independently, from the first two sentences." *Id.* at 828. Given the words of the proposal and the Authority's holding with regard to Proposal 2 in its entirely, this conclusion makes no sense.

In an effort to defend its conclusion, the Authority found that the first two sentences of Proposal 2 "address the construction of the officers' station, [while] the third sentence addresses creating a 'secure area' in the compound-detector area . . . [and not] necessarily the physical, block-and-mortar officers' station discussed in the first two sentences of the proposal." *Id.* Most notably, the Authority held that "the severed sentence of the proposal uses the word '*should*' and we have adopted the Union's explanation that the severed sentence does not require that the compound detector area have a secure area." *Id.* (emphasis added). Thus, the Authority's decision relies heavily on its view that the word "should" commands nothing and that, therefore, the third sentence has no substantive content.

In its brief to this court, the FLRA amplified its view of the third sentence of Proposal 2:

> [T]he Authority found that the [third sentence in Proposal 2] is within the duty to bargain because it "does not require that the compound-detector area have a secure area," *only that it should have such an area*. In other words, the Authority determined that the proposal's use of the non-obligatory term "should" does not affect any management right . . . . The Agency's claim must fail because the Agency did not, and cannot, explain how a proposal that does not require it to do anything could be outside the duty to bargain.

Br. for Resp't at 29 (emphasis added) (citation omitted). When pressed at oral argument on this point, counsel for the Authority repeated the claim that the third sentence in Proposal 2 requires nothing of BOP. He also asserted that, even if it were included in a collective bargaining agreement, the Union's proposal would have no meaning and could not be enforced. According to counsel, BOP was thus obliged to bargain over the third sentence of Proposal 2. This is a specious line of reasoning.

The Authority rhetorically asks: how can "a proposal that does not require [BOP] to do anything" be outside the duty to bargain? *Id.* This is the wrong question. The proper question here is: how can a proposal that purports to have no meaning whatsoever be within the scope of the statutory duty to bargain? The Authority has provided no answer.

The Authority's claim that the disputed proposal is meaningless is sophistry. On its face, the third sentence in Proposal 2 plainly would require a secure area for use as a control center; that is what the Union was seeking. And the Authority concedes that such a proposal would not be negotiable. The Authority's claim that the word "should" in the third sentence somehow negates the force of what is being proposed does not withstand scrutiny. "Should" is typically used to express an obligation or duty. *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2104 (3d ed. 1976). Thus, the disputed proposal presented by the Union certainly suggests something more than nothing.

Finally, counsel for the Authority acknowledged that if BOP was required to bargain over the third sentence in Proposal 2 and the parties failed to reach agreement, the dispute could be submitted to the Federal Services Impasses

Panel for resolution. 5 U.S.C. § 7119(b). The Impasses Panel may use any of a number of dispute resolution techniques – such as informal conferences, additional mediation, fact finding, written submissions, recommendations for settlement, and mediation-arbitration – to resolve a bargaining impasse. If the parties are still unable to reach settlement, the Impasses Panel may impose contract terms upon the parties. *Id.* § 7119(c); 5 C.F.R. §§ 2471.1, 2471.6. Both this court and the Authority have held that, barring "unusual circumstances," Panel decisions are not reviewable by the Authority or a court. *See, e.g.*, *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499 (D.C. Cir. 1984) (holding that 5 U.S.C. § 7119(c)(1) "commits to the [impasses] panel broad authority to make swift decisions in order to end disputes," and that such decisions are normally binding and nonreviewable); *Nat'l Treasury Emps. Union*, 63 F.L.R.A. 183 (2009) *(NTEU),* (same). In *NTEU*, the Authority tellingly stated that, in matters concerning the resolution by an Impasses Panel of a negotiation impasse under the statutory authority of § 7119(c)(1),

> [the statute] establishes the Panel as an independent entity within the Authority and commits to the Panel the broad authority to make decisions to resolve negotiation impasses. *Council of Prison Locals v. Brewer*, 735 F.2d at 1499. That broad authority denies direct review of Panel orders by either the Authority or the courts. *Id*. at 1499-1500.

63 F.L.R.A. at 187.

Given the wording of the Union's proposal, an Impasses Panel seemingly would be free to impose a contract term that requires BOP to construct a secure area for controlling inmate movement through the metal detector area, enclosed in a

chain link fence, or something comparable. This would be quite ironic, because the Authority suggests that BOP has no obligation to bargain over such a requirement.

The point here is that the Authority's decision that the third sentence in Proposal 2 is negotiable could result in its imposition on the parties by an Impasses Panel. It is possible, of course, that BOP could fail or refuse to cooperate in impasse procedures or decline to adhere to a contract provision imposed by an Impasses Panel requiring it to construct the secure area. This might prompt the Union to file an unfair labor practice charge with the Authority pursuant to 5 U.S.C. § 7116(a)(6), which would allow the Authority to clarify its position on the meaning of the third sentence in Proposal 2. *Brewer*, 735 F.2d at 1500 (noting that it is an unfair labor practice for an agency or a labor organization "to fail or refuse to cooperate in impasse procedures and impasse decisions"). But the Authority has not argued here that if an Impasses Panel imposes a contract term that requires BOP to construct a secure area to be used as a control center for controlling inmate movement through the metal detector area, enclosed in a chain link fence, or something comparable, this would be subject to review by the Authority. Therefore, we decline to address this issue.

In sum, the Authority's construction of the third sentence in Proposal 2 defies reasoned decisionmaking. We therefore hold that the Authority's decision regarding the third sentence of Proposal 2 is arbitrary and capricious.

## VI. CONCLUSION

For the reasons given above, we deny BOP's motion to dismiss on grounds of mootness and its motion to vacate the Authority's decision and order. We grant the Authority's

cross-petition to enforce its decision and order regarding Proposal 1, and we grant BOP's petition to vacate the Authority's decision and order regarding the third sentence in Proposal 2. We hereby remand the case to the Authority to allow it to determine whether, in light of the changed circumstances occasioned by the changed use of the metal detectors, the order to bargain over Proposal 1 should be revised.

SILBERMAN, *Senior Circuit Judge*, concurring in part. I join the panel opinion with one exception. Counsel for the FLRA explicitly stated at oral argument that an impasse panel would not be able to order the petitioner to actually do anything regarding the "should" clause. I think that statement would certainly constitute an "unusual circumstance" providing grounds for review of a wayward impasse panel decision, and we should accept the Authority's assurance. That makes the dispute over the "should" clause a tempest in a teapot.